FREDERICK O. RAYMOND vs. CHARLES N. RHODES.

Essex. Nov. 8, 1882. — Sept. 6, 1883. C. ALLEN, COLBURN & HOLMES, JJ., absent.

The objection that the consideration of a contract is not correctly stated in a declaration is not open on a bill of exceptions which states that no question was made concerning the pleadings.

A. owed a certain sum upon a promissory note payable to C. and secured by a mortgage running to him, but representing a debt due to B., and C. held the note and mortgage for B.'s benefit. A. owed other persons besides B., with whom, being insolvent, he settled, paying one in full and to the others different portions of their debts. A. also made a settlement with B. and C., which was evidenced by a written agreement, according to the terms of which A. paid fifty per cent of B.'s debt, part to B. and part to C., and B. released C. from all liability to him, and the note and mortgage were given up by C. and discharged. The agreement then provided as follows: " Said B. is to receive from said A. pro rata per cent of all moneys said A. may hereafter pay his 'borrowed money creditors;' as he calls them, to the amount of fifty per cent on " the sum due on said note before the settlement, said amount being stated in figures; " the pro rata herein named is intended to mean on all moneys paid borrowed money creditors, after the settlement which A. now says he has made with such creditors," reciting in full the settlements said to have been made, and leaving the amount remaining unpaid to be computed. *Held*, in an action by B. against A. upon this agreement, that it was not void for uncertainty ; and that the meaning was, that, when A. should pay to his " borrowed money creditors " any portion of their debts remaining unpaid, he should pay to B. the same proportion of his debt remaining unpaid.

W. ALLEN, J. The defendant was indebted in the sum of $1628.53 upon a promissory note payable to one Smiley and secured by a mortgage running to him. This represented a debt due to the plaintiff, and Smiley held the note and mortgage for his benefit. An arrangement was made by which the note to Smiley was given up, the mortgage discharged, (Smiley being released from all liability to the plaintiff,) and a new agreement made between the plaintiff and the defendant, upon which this suit is brought.

It is objected, that the true consideration of the agreement is not set forth in the declaration. But this objection is not open upon the exceptions. It is expressly stated that no question was made concerning the pleadings, and the only ruling stated or excepted to is, that the agreement was void for uncertainty, and that, upon the facts found, the plaintiff could not recover.

It appears that the defendant was indebted to four persons, besides the plaintiff, whom he called his "borrowed money creditors," with whom he, being insolvent, had settled, paying one in full, and to the others different portions of their debts; that he had a settlement with the plaintiff and Smiley, which was evidenced in a writing, not signed, and which contains the agreement declared on. The writing provides that fifty per cent of the plaintiff's debt shall be paid, part to Smiley and part to the plaintiff; that the plaintiff shall release Smiley from all indebtedness; and that for such release the plaintiff shall receive future contingent payments upon the unpaid balance of his debt. The payment was made, Smiley was released, and the note and mortgage were given up by him and discharged.

The only question presented to us is whether the provision in regard to the future payments is void for uncertainty. This provision is as follows: "Said Raymond is to receive from said Rhodes pro rata per cent of all moneys said Rhodes may hereafter pay his 'borrowed money creditors,' as he calls them, to the amount of fifty per cent on $1628.53 = $814.26." Then follow provisions intended to explain this. The parties evidently intended to provide for payments to the plaintiff upon the unpaid balance of his debt in some proportion to other payments which might be made. "Pro rata per cent" is equivalent to "rate per cent." "All moneys said Rhodes may hereafter pay" means "all payments said Rhodes may hereafter make." The last clause states the unpaid balance of the plaintiff's debt as the amount which the payments are not to exceed, and, by inference, as the amount the proportional part of which is to be paid. The first part attempts to fix the rate per cent, and the last clause to fix the amount to which the rate so fixed is to be applied. The latter seems sufficiently plain; the amount of the plaintiff's debt remaining unpaid, at any time when the proportion should be fixed, was to be the sum or principal to which the proportion was to be applied, and the proportional part of which was to be paid. It is more difficult to discover how the parties intended that the proportion should be fixed. They intended that a sum should be paid to the plaintiff which should bear the same proportion to his unpaid debt which a sum which should have been paid to "borrowed money creditors" bore to

something which is not clearly expressed.  By the words " pro rata per cent of all moneys said Rhodes may hereafter pay," was evidently intended, not a proportion of the money paid, but the proportion which the money paid should bear to something which the parties had in mind and undertook to insert in the writing.   What the principal was of which such payment should constitute a per centum, which should be the rule of proportion for the payment upon the plaintiff's debt, is not expressed except by the words " pay to his borrowed money creditors," and by the subsequent provision in the writing that the payment intended is to creditors after the settlement which Rhodes said he had made with them.   But, taking all the provisions of the writing, with the circumstances interpreting it, we think the meaning is, that, when the defendant should pay to his " borrowed money creditors " a portion of their debts remaining unpaid, he should pay to the plaintiff the same proportion of his debt remaining unpaid.   The " borrowed money creditors " were taken as a class, not as individuals.   It was immaterial to the plaintiff to which of them a payment should be made, or what proportion of the debt of any one should be paid.   He simply intended to provide that, when any payment should be made to that class of creditors, whether to any or all of them, he should have the same proportion of his remaining debt as the amount paid to them, or any of them, bore to the whole unpaid debts of that class.

The writing proceeds, after the part above quoted, to show the amount remaining unpaid to the creditors mentioned.   It states, that " the pro rata herein named is intended to mean on all moneys paid borrowed money creditors, after the settlement which C. N. Rhodes now says he has made with such creditors," and then, instead of stating in figures the amount of their debts which was not paid in the settlement, it recites in full the settlements said to have been made, leaving the amount remaining unpaid to be computed.   This is the way in which the amount unpaid of the plaintiff's debt is stated, except that in that case the figures are carried out.   We think the agreement may be construed as meaning, that, if Rhodes should thereafter pay any of his remaining borrowed money indebtedness, he would pay the same proportion of the plaintiff's

remaining indebtedness; or, to express it more nearly in the language of the parties, that the plaintiff should receive from the defendant the same rate per cent upon his unpaid debt of $814.26 as the defendant should at any time pay upon his unpaid borrowed money indebtedness of $5772.

*Plaintiff's exceptions sustained.*

*E. J. Sherman & C. U. Bell*, for the plaintiff.

*C. R. Train & J. O. Teele*, for the defendant.