## PHILIP M. LYDIG *vs.* DWIGHT BRAMAN.

Suffolk.    March 21, 1900. — December 1, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Agreement to repurchase Bonds — Finding warranted by Evidence — Declaration — Variance — Statute of Frauds — Demand made within Reasonable Time — Statute of Limitations — Action — Ownership of Bonds — Damage.*

The contention in an action for damages for breach of an alleged agreement to repurchase certain bonds sold by the defendant to the plaintiff, that the evidence did not warrant a finding that the offer to sell contained in a certain letter of August 9, 1888, was ever accepted, cannot avail, as the judge having found that, " at the time of the sale of the bonds, September 28, 1888, and May 10, 1889, it was understood by both parties that the sale was under the terms and conditions of the offer of August 9, 1888," to the effect that if at any time the plaintiff should care to sell the bonds, in case a more favorable investment could be found, the defendant would take them of him at the same price, the defendant's letter of September 3, 1890, stating that if the bonds were sent to him he would give his check for them at any time, written nearly a year after ten of the bonds had been taken back, would of itself warrant that finding, there being also other evidence on the point.

It may be that in a case where on the face of the contract declared on the statute of frauds had been complied with, but in the case of the contract found by the court it had not been complied with, the objection of the statute, if raised in the court below, is open without having been pleaded; but neither the defence of variance nor the defence of the statute of frauds is open if not raised at the trial; and in this case there would have been nothing in the objection of the statute had it been raised, as the only objection to the defendant's written offer, as a sufficient memorandum of the contract found by the court, that it was an offer to sell

$25,000 of bonds and only $20,000 were bought, is met by the fact that the subsequent letters are a sufficient memorandum in writing of a parol contract for the purchase of $20,000 of bonds on the terms on which the defendant in his written offer agreed to sell $25,000 of bonds; and, under the circumstances of this case, the plaintiff's request to the defendant to take back the bonds was made within a reasonable time.

The contention, in an action for damages for breach of an alleged agreement to repurchase certain bonds sold by the defendant to the plaintiff, that the action did not accrue within six years of the date of the writ, April 28, 1897, and is barred by the statute of limitations, this contention being based on the ground that the plaintiff made a demand for the return of the bonds in his letters of August 20 and 27, 1890, and consequently the six years ran out in 1896, and further, that by making a new demand the plaintiff could not enlarge his rights in that connection, cannot avail, as there was evidence that the demand contained in the plaintiff's letters of August 20 and 27, 1890, was withdrawn by him, and that the demand on which the finding for the plaintiff was based was made on December 19, 1895.

The contention, in an action for damages for breach of an alleged agreement to repurchase certain bonds sold by the defendant to the plaintiff, that the plaintiff cannot maintain the action because he did not own the bonds at the time of his demand, and could not in any event recover damages for the reason that he disposed of the bonds while they were at the same price at which he bought them, and consequently suffered no damage, is disposed of by the fact that there was evidence that when the bonds were bought the parties contemplated that they were to be held under a voluntary trust for the plaintiff's mother, and the right to return the bonds so held in trust was acknowledged by the defendant in a letter written by him to the plaintiff.

CONTRACT, to recover damages for breach of an alleged agreement to repurchase certain bonds sold by the defendant to the plaintiff. Writ dated April 28, 1897.

The declaration was as follows: " And the plaintiff says that on or about the ninth day of August, 1888, the defendant wrote a letter to the plaintiff, a copy whereof is hereto annexed, whereby the defendant offered to sell to the plaintiff certain bonds of the St. Louis, Kansas, and Southwestern Railroad Company, at the price of one thousand and five dollars per bond, and accrued interest, and further offered that if the plaintiff should purchase said bonds of the defendant, the defendant would agree to repurchase the same of the plaintiff at the same price at any time, and the plaintiff accepted said offer and purchased said bonds of the defendant, and paid the defendant the said price therefor; and the defendant thereupon became bound to the plaintiff to repurchase said bonds at said price at any time in accordance with said offer, and thereafter the plaintiff finding a more favorable investment, requested the defendant to

repurchase said bonds at said price, and the defendant has re-purchased a portion of said bonds at said price, but refuses to repurchase ten of said bonds of the plaintiff in accordance with said agreement, and said bonds are of no value, and the defendant owes the plaintiff the sum of ten thousand five hundred dollars ($10,500), with interest thereon from July 1, 1894, when the defendant refused to repurchase the same."

The following is the material portion of the letter: "The St. Louis and Southwestern bonds, of which I also enclose copy, I took the entire issue, $735,000, and have disposed of all save $65,000; they have been selling at 106 and Int. I will let you have $25,000 at 105 and Int. and if at any time you should care to sell them, in case a more favorable investment can be found, I will take them of you at the same price, this will insure you at all events perfect safety and income, and if the bonds are held you can realize 110 to 112 for them."

The answer contained a general denial and set up the statute of limitations.

Trial in the Superior Court, without a jury, before *Bond*, J., who found for the plaintiff in the sum of $13,961.43; and the defendant alleged exceptions, in substance as follows.

The defendant was a stockbroker who sold to the plaintiff $20,000 of St. Louis, Kansas, and Southwestern Railroad bonds in 1888 and 1889, agreeing to take them back at any time at the same price in case a more favorable investment could be found. The defendant subsequently took back $10,000 of the bonds when requested, but later refused to take back the balance, and this action was brought to recover damages for breach of the agreement.

On August 9, 1888, the defendant wrote the letter annexed to the declaration, and in September the plaintiff told the defendant that he had received the letter. The defendant said they were the best bonds he knew of, and the plaintiff bought ten of them, and stated that he could not take as many as $25,000 at that time, as he did not have money enough to take all the defendant offered; that he would have more money coming in later and then would take some more of them; that he was not quite certain when he would get it, but knew he could get it within eight or nine months, and the defendant agreed to it,

and at this time repeated his promise to take back the bonds at any time.

During the following winter the plaintiff told the defendant he was going to make a voluntary trust for his mother; that he was going to put some of these securities into the trust, and therefore wanted the best, and the defendant advised these bonds and reiterated his promise to take them back at any time, and on May 10 the plaintiff bought ten more of the bonds.

The plaintiff made the trust for his mother because she was dependent upon him for support, and put in the ten bonds bought in May. Under the trust one Weeks was trustee for his mother for her life, and the trust terminated on her death. The plaintiff had absolute control over the bonds, and they have always been in his possession, so he could tender them back to the defendant.

In the summer of 1889 the plaintiff went to Europe, and remained there until 1892. On October 21, 1889, he wrote the defendant, asking him to take back ten of the bonds; and in November, 1889, the defendant took back these ten bonds at the same price that the plaintiff paid for them, stating on the 2d of that month, in a letter to Weeks, "I buy of him [Lydig] 10,000 of the . . . bonds . . . @ 105 & interest." In 1890, in Europe, the plaintiff saw the defendant, inquired about the bonds, and suggested that if he could find a better investment he would like to have the defendant take them back. The defendant said that they were an excellent security, nothing could be better in the world than they were, and that he had a great many of them himself, and repeated his promise to take them back at any time.

On August 20 and on August 27, 1890, the plaintiff wrote to the defendant asking him to take back the bonds, and in reply the defendant wrote to the plaintiff on September 3, 1890, the following letter:

"Yours of the 20th recd. yesterday. With regard to your bonds they are the best security I can commend to you as since the Atchison bought the road the bonds are doubly secure as they have the Atchison now behind them and this is placed now on a solid basis being one of the most powerful corporations of the West, these bonds are assumed by the Atchison and come in

ahead of $80,000,000 of income bonds on which they are earning 5 % and 1,000,000 shares of stock which sells at 43, so unless the Atchison goes to pieces, which is impossible, these bonds are perfectly good.   In fact they are on a parity with the Atchison 4's which sell at 85 and pay 5 % and which have been largely bought by London and the Continent by the best houses in Europe for their largest and most conservative clients.   Still if you like instruct Weeks to send us the bonds and we will give you cheque for them any time.   Still I know of nothing so good as instead of getting 6 % really you can only get but five on bond and mortgage."

After the receipt of this letter the plaintiff wrote to Weeks, cancelling instructions which he had given him to deliver the bonds to the defendant.   The plaintiff returned to this country in 1892 and saw the defendant several times about the bonds, and the defendant advised the plaintiff to keep them.   The interest on the bonds was defaulted in the autumn of 1894, and thereupon the plaintiff again asked the defendant to take back the bonds ; and the defendant told the plaintiff he was bringing lawsuits to protect the bonds, and there was no doubt he would win the suits and the bonds would be just as valuable as they were before, and thereupon the plaintiff let the matter rest until December 19, 1895, when he made written demand upon the defendant, receiving in reply a refusal to comply with the demand.

At the close of the evidence the defendant requested the following rulings : 1. The offer contained in the defendant's letter of August 9, 1888, remained open only for a reasonable length of time.   2. In view of the whereabouts of the parties and the amount and nature of the securities offered for sale, the offer of August 9, 1888, did not remain open until October 1, 1888. 3. The offer of August 9, 1888, did not remain open until May 10, 1889.   4. The offer of August 9, 1888, could be accepted only in its terms.   5. A purchase of $10,000 worth of bonds, or of $20,000 worth of bonds, was not an acceptance of the offer of August 9, 1888, to sell $25,000.   6. If the plaintiff bought the bonds merely as agent for another, he has suffered no damage, and cannot recover any in this action.   7. If the plaintiff, after buying the bonds, disposed of them while at the same price at·

which he bought them, he has suffered no damages. 8. If the plaintiff in August or September, 1890, made a demand upon the defendant to repurchase the bonds at their purchase price, and this demand was not complied with, his cause of action, if any, accrued at that time. 9. A cause of action accruing in 1890 was barred by the statute of limitations before the date of the writ in this case. 10. There is no evidence to warrant a finding for the plaintiff.. 11. Upon the undisputed facts, the plaintiff cannot recover. 12. If the plaintiff did not own the bonds at the time he requested the defendant to buy them back, he cannot recover in this action. 13. An offer to take back bonds "at any time," means only within a reasonable time. 14. The request to have the bonds taken back was not, under all the circumstances, made within a reasonable time.

The judge found as a fact that, at the time of the sale of the bonds, September 28, 1888, and May 10, 1889, it was understood by both parties that the sale was under the terms and conditions of the offer of August 9, 1888.

The judge ruled that the agreement of the defendant to take back the bonds contemplated, that the bonds were to be held by the plaintiff as an investment until such time as he could make a more favorable investment of the money paid for them, and until such time the agreement to take them back was binding on the defendant.

The judge also found as a fact that the defendant, by his statements to the plaintiff as to the value of said bonds, persuaded the plaintiff to retain them as the best investment he could make, until December 19, 1895, when he made a formal demand on the defendant to take them back under the defendant's agreement, and the defendant refused.

The judge gave the fifth, sixth, seventh, ninth, and thirteenth rulings requested by the defendant, and declined to give the first, second, third, eighth, tenth, eleventh, twelfth, and fourteenth, and modified the fourth ruling requested by adding at the end thereof the words "except by agreement of parties."

*T. Hunt*, for the defendant.

*E. W. Hutchins*, for the plaintiff.

LORING, J. 1. The defendant's first contention is that the evidence did not warrant a finding that the offer to sell contained

in the letter of August 9, 1888, was ever accepted. The court found that " at the time of the sale of the bonds, September 28, 1888, and May 10, 1889, it was understood by both parties that the sale was under the terms and conditions of the offer of August 9, 1888." The defendant's letter of September 3, 1890, written nearly a year after ten of the bonds had been taken back, would of itself warrant that finding; there was also other evidence on the point.

2. The defendant's next contention is that there is a fatal variance between the contract declared upon and the contract or contracts which the plaintiff has proved and upon which the court has based its finding.

The question of variance was not raised by the defendant and is not now open to him. The defendant urges that if that rule of practice is applied in this case he has lost his right to set up the defence of the statute of frauds, and that he has lost this right without any fault on his part; that on the face of the contract declared on the statute of frauds had been complied with, but that in the case of the contract found by the court the statute of frauds was not complied with.

It may be that in such a case the objection of the statute of frauds, if raised in the court below, is open without having been pleaded. *Hughes* v. *Gross*, 166 Mass. 61, 66. But neither 'the defence of variance nor the defence of the statute of frauds is open if not raised at the trial.

In the case at bar there would have been nothing in the objection of the statute of frauds had it been raised. A written offer accepted by parol is a sufficient memorandum to satisfy the statute of frauds. *Doherty* v. *Hill*, 144 Mass. 465, 468. In this case the only objection to the defendant's written offer of August 9, 1888, as a sufficient memorandum of the contract found by the court, is that it is an offer to sell $25,000 of bonds and only $20,000 were bought. But the subsequent letters of the defendant, dated November 2, 1889, and September 3, 1890, taken in connection with the plaintiff's letters of October 21, 1889, and August 20, 1890, in answer to which they were written, show that the letter of August 9, 1888, should be construed to be an offer to let the plaintiff have bonds of the kind in question up to the amount of $25,000, that is to say, $25,000 of

the bonds in question, or such part of them as he wanted, and to take back such bonds as he, the defendant, bought at $105 and interest; or at any rate these letters are a sufficient memorandum in writing of a parol contract for the purchase of $20,000 of bonds on the terms on which the defendant in his letter of August 9 offered to sell $25,000 of bonds.

3. The defendant's next contention is that even if the proposition of August 9, 1888, had been accepted, the plaintiff's right to have the defendant repurchase the bonds was a right which had to be exercised within a reasonable time, and his demand to take them back " was not under all the circumstances made within a reasonable time." The presiding justice ruled that the " offer to take back bonds ' at any time,' means only within a reasonable time," and refused to rule that the request to take back the bonds which the plaintiff made was not under all the circumstances made within a reasonable time. A majority of the court are of opinion that the plaintiff's request was made within a reasonable time, and therefore that this request for a ruling was properly refused.

It is not necessary to decide when, by the true construction of the contract, which, on the finding of the court, was made by the parties, the plaintiff's right to return the bonds had to be exercised; whether the right of return could be exercised at any time so long as the bonds remained unpaid, or whether it was confined to the life of the bonds, or to six years after the right accrued under the rule referred to in *Campbell* v. *Whoriskey,* 170 Mass. 63, or to a reasonable time under all the circumstances. Whichever is the true construction, the demand was seasonably made.

The only demand found by the judge to have been made was made on December 19, 1895. If the principle referred to in *Campbell* v. *Whoriskey* is applicable, and therefore under the terms on which the bonds were originally bought the demand should have been made within six years from the date when they were purchased, the defendant is not in a position now to take that objection. The defendant took back ten of the bonds in 1889; in the following year the plaintiff requested him to take back the remaining ten. In answer to that request he not only advised the plaintiff to keep these bonds as being " the

best security " to be found, but stated in writing in his letter of September 3, 1890, " We will give you cheque for them any time." He had, according to the plaintiff's testimony, given the plaintiff the same assurance verbally earlier in the same year. In 1892, 1893, and 1894, the plaintiff again asked to have the bonds taken back, but the court found that the defendant " persuaded the plaintiff to retain them as the best investment he could make, until December 19, 1895, when he made a formal demand." This demand was, as matter of law, seasonably made. After inducing the plaintiff, who made a seasonable demand within the six years, not to press that demand, by stating that he would take back the bonds " at any time," the defendant cannot claim that a demand made within a reasonable time thereafter was not seasonably made. The demand of December 19, 1895, was made less than six years thereafter, and in the opinion of a majority of the court was seasonably made.

In addition to the ruling stated above the presiding justice ruled " that the agreement of the defendant to take back the bonds contemplated, that the bonds were to be held by the plaintiff as an investment until such time as he could make a more favorable investment of the money paid for them, and until such time the agreement to take them back was binding on the defendant." If it be assumed in favor of the defendant that this ruling is not a ruling dealing solely with the defendant's contention that there was no obligation to take back the bonds because only $20,000 in place of $25,000 of bonds were purchased, but is to be construed to be a ruling that the right to have the bonds taken back continued until a more favorable investment could be found, without any qualification, in spite of the judge's ruling that " any time " means only " within a reasonable time," the defendant is not prejudiced by it. The demand which was found to have been made was, as matter of law, made within a reasonable time; and if this ruling is to be so construed, and is wrong, the plaintiff is not injured by it.

4. The defendant's next contention is that the plaintiff's cause of action did not accrue within six years of the date of the writ, and is barred by the statute of limitations; this is based on the ground that the plaintiff made a demand for the

return of the bonds in his letters of August 20 and 27, 1890, and consequently the six years within which an action could be brought on that demand ran out in 1896 ; and further, that the plaintiff by making a new demand could not enlarge his rights in that connection.   But there was evidence that the demand contained in Lydig's letters of August 20 and 27, 1890, was withdrawn by him, and that the demand on which the finding for the plaintiff was based was made December 19, 1895.

5. The defendant's next contention is that the plaintiff cannot maintain the action, because he did not own the bonds at the time of his demand, and that he could not, in any event, recover damages from the defendant for refusing to take them back, because he had disposed of the bonds while they were at the same price at which he bought them, and consequently suffered no damage.   But there was evidence that when the bonds were bought the parties contemplated that they were to be held under the voluntary trust for his mother, and the right to return these bonds so held in trust was acknowledged by the defendant's letter of September 3, 1890.   In such a case the plaintiff is entitled to recover.   *Drummond* v. *Crane*, 159 Mass. 577, 580.   *Farr* v. *Rouillard*, 172 Mass. 303, 305.

*Exceptions overruled.*