BEACH AND CLARRIDGE COMPANY *vs.* AMERICAN STEAM GAUGE AND VALVE MANUFACTURING COMPANY.

Suffolk. March 8, 1909. — May 21, 1909.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Contract,* What constitutes, Performance and breach. *Damages.*

The following offer was made by one corporation to another and was accepted by the corporation to which it was addressed: " Gentlemen: — I am authorized by our board of directors to offer you the sum of $100,000 for your property on Camden Street in Boston which we are now occupying on a lease, the terms to be as follows : $5,000 cash when signing papers, $5,000 cash on delivery of the deed, remainder to remain on mortgages, you to take a second mortgage with interest at 5% and arrange for renewal of first mortgage or extension of it until it can be placed for a term of years, you to pay a sufficient sum on the first mortgage in order to get it extended, payments to be arranged so that we shall pay you the sum of $11,000 per year, you to pay interest on the mortgages and taxes and the balance to be applied on the purchase price of the property, you to pay the insurance up to the time it is transferred to us, also the taxes for the year 1903." *Held,* that the offer was not a mere preliminary proposal, but with its acceptance constituted a contract which fixed the rights of the parties, and that it contained a sufficiently definite and certain statement of all the essential terms which the parties then intended to introduce into their contract, and consequently was not too indefinite to be the foundation of a final agreement.

In an action for the alleged breach of a contract to buy certain real estate from the plaintiff for the sum of $100,000, if it appears that the defendant refused to buy

the property except upon a condition which was not contained in the contract, so that the plaintiff was excused from further performance or offer of performance on his part, but it is admitted that $100,000 was no more than a fair price for the property, *it seems*, that the plaintiff cannot recover more than nominal damages for the failure of the defendant to pay that price for it.

In an action for the breach of a contract to buy from the plaintiff for $100,000 certain real estate, which was subject to a mortgage, the plaintiff alleged that the defendant by conspiracy and combination with the mortgagee made it impossible for the plaintiff to perform his contract. It appeared that the mortgagee refused to extend the mortgage and proceeded to a foreclosure under a power of sale contained in the mortgage, that by the terms of the sale a deposit of $5,000 was required, that the attorney for the plaintiff was the highest bidder and the property was knocked down to him for $65,000, but that he failed to deposit $5,000 in cash and offered instead a cashier's check for that amount, which the auctioneer after consultation with the attorney for the mortgagee refused to accept, that the attorney for the mortgagee was mistrustful in regard to the validity of the check because it had been issued for several weeks and had been used at an injunction trial two weeks before, that the attorney for the plaintiff asked for a suspension of the sale for fifteen or twenty minutes to enable him to get the money on the check, saying that he could get the money at the bank and return within that time, and there was evidence that he could have done so. Thereupon the property was put up again and the only bidders were the attorney for the mortgagee and the attorney for the defendant, and the property was sold to the attorney for the defendant for $60,400, and the attorney for the defendant immediately deposited $5,000 in cash with the auctioneer. *Held*, that the evidence would not warrant a finding that there was any conspiracy between the defendant and the mortgagee to deprive the plaintiff of his rights or disable him from performing his contract, that the defendant had a right to bid at the sale and to acquire the property in the manner that he did for a smaller price than that stipulated in his agreement with the plaintiff, that the mortgagee's attorney and the auctioneer had a right to refuse to receive a cashier's check instead of actual money, especially under the circumstances, and also had a right to refuse to give the plaintiff's attorney time to procure the money on the check. Whether the facts could be made the ground of a bill of equity to avoid the sale was not before the court.

CONTRACT for the alleged breach of an agreement to buy from the plaintiff a parcel of land with the buildings thereon numbered from 208 to 220 on Camden Street in Boston for the price of $100,000, it being alleged that the offer to buy the property was made in writing by the defendant on November 25, 1903, and was accepted orally by the plaintiff on that day, and that subsequently the plaintiff confirmed and repeated its acceptance in a letter dated December 1, 1903, copies of the writings being attached to the declaration as printed below. The first count alleged that the defendant shortly after the plaintiff's acceptance of the defendant's offer, and while the plaintiff was ready and able to perform its part of the contract, notified the plaintiff

that it repudiated the contract, and refused to perform it according to its terms, and the second count alleged that the defendant by conspiracy and combination with the mortgagee of the property made it impossible for the plaintiff to perform its contract. Writ in the Supreme Judicial Court dated April 8, 1904.

The writings above referred to, of which copies were attached to the declaration, were as follows:

"Boston, Mass. Nov. 25, 1903.
"Messrs. Beach & Clarridge Co.,
Boston, Mass.

" Gentlemen: — I am authorized by our Board of Directors to offer you the sum of one hundred thousand dollars ($100,000) for your property on Camden Street in Boston which we are now occupying on a lease, the terms to be as follows: —

" $5000.00 cash when signing papers,

" $5000.00 cash on delivery of the deed.

" Remainder to remain on mortgages, you to take a second mortgage with interest at 5% and arrange for renewal of first mortgage or extension of it until it can be placed for a term of years, you to pay a sufficient sum on the first mortgage in order to get it extended, payments to be arranged so that we shall pay you the sum of $11,000 per year, you to pay interest on the mortgages and taxes and the balance to be applied to the purchase price of the property, you to pay the insurance up to the time it is transferred to us, also the taxes for the year 1903.

" Respectfully submitted,
" American Steam Gauge & Valve Mfg. Co.
By Ralph B. Phillips
Sec'y."

"Boston, Dec. 1st, 1903.
" American Steam Gauge & Valve Co.,
212 Camden St.,
Boston, Mass.

" Gentlemen: — In reply to your letter of Nov. 25th 1903 — offering us a sum of $100,000$^{00}$ (one hundred thousand dollars) for our property, which you now occupy, I am authorized by our Board of Directors to accept your offer on the terms proposed by

you and we hold ourselves in readiness to sign formal agreements and make a deed of the property.

> " Yours truly —
>
> " Beach & Clarridge Co. of Boston
> by M. Douglas Flattery
> Counsel for Beach & Clarridge Co."

The case was tried before *Hammond*, J., who, upon a motion of the defendant, ruled that there was nothing to go to the jury and ordered a verdict for the defendant. Thereupon the justice reported the case for determination by the full court of the question whether the plaintiff was entitled to go to the jury. If he was not, there was to be a judgment on the verdict; otherwise, there was to be a new trial.

The facts in regard to the foreclosure sale, referred to in the opinion, which were relied upon by the plaintiff in support of its second count, were as follows :

The foreclosure sale was advertised in the usual manner, and display advertisements also were inserted in the Boston Herald and a trade paper. The sale was advertised to take place on January 16, 1904, but was adjourned, pending the hearing upon a bill in equity to enjoin the foreclosure, to January 30, 1904, at which time the sale was made by one Hatch, a licensed auctioneer. Representatives of the plaintiff, of the defendant, and of the mortgagee, Mr. McLeod, an attorney at law acting for the defendant, and some casual bystanders were the only persons present. The terms of sale required $5,000 down, and the balance within ten days thereafter. Upon the property being put up for sale the only bidders were Mr. Flattery, on behalf of the plaintiff, and Mr. McLeod. The property was finally declared sold to Mr. Flattery for $65,000. Mr. Flattery presented a cashier's check for that amount. After some conference the auctioneer refused to take the check, whereupon Mr. Flattery asked for a suspension of the sale for fifteen or twenty minutes to enable him to get the money on the check, stating that he could get the money at the bank and return within that time. There was evidence tending to show that if this request had been granted the money could have been obtained within that time. There was also evidence tending to show that, according to the custom

of the banks in Boston, the money could have been obtained upon this check by any person to whom it was indorsed upon being identified, and that the money would be paid on the check solely upon reliance on the drawer of the check and without regard to the financial responsibility of the payee or bearer, and without regard to the lapse of time since the date of the check. There was evidence tending to show that Mr. Gleason, the attorney for the mortgagee, was mistrustful of the validity of the check, because it had been issued several weeks, and because it was the same check which was used at the injunction trial two weeks before, and also because he doubted the good faith of Mr. Flattery. There was also evidence tending to show that upon the presentation of the check, it appearing that there was some doubt about it being accepted, Mr. McLeod insisted upon the property being put up again, and repeatedly called upon the auctioneer to put the property up again; and that Mr. Gleason, when asked by the auctioneer what he should do about accepting the check, said, "It is up to you and if you take the check we shall look to you for the money." The property was put up again, and the only bidders were the representative of the mortgagee and Mr. McLeod, and the property was finally sold to Mr. McLeod for the sum of $60,400, who immediately deposited $5,000 cash with the auctioneer.

*H. E. Warner*, for the plaintiff.

*G. V. Phipps*, (*W. A. Webster* with him,) for the defendant.

SHELDON, J.  The defendant's written offer of November 25, 1903, and the plaintiff's acceptance of that offer, made by a vote of its directors and communicated to the defendant on the same day, as the jury might have found, were enough, if sufficiently definite in its terms, to constitute a binding contract between the parties. *Metropolitan Coal Co.* v. *Boutell Transportation & Towing Co.* 196 Mass. 72, 82. *Howe* v. *Watson*, 179 Mass. 30, 39. *Lydig* v. *Braman*, 177 Mass. 212, 218. *Doherty* v. *Hill*, 144 Mass. 465, 468. *Sanborn* v. *Flagler*, 9 Allen, 474. But the offer was also accepted in writing by the plaintiff's letter of December 1; and the plaintiff had, as stated in *Metropolitan Coal Co.* v. *Boutell Transportation & Towing Co.*, *ubi supra*, the right to rely upon each one of these acceptances.

The defendant's contention is that its offer was upon its face

intended merely as a preliminary proposal or step in the negotiations which contemplated the making of a final contract by which alone the parties were to be bound, as in *Lyman* v. *Robinson*, 14 Allen, 242, and *Sibley* v. *Felton*, 156 Mass. 273. But the offer before us does not appear to be one of that kind. It was not a bare preliminary proposal, expected only to be the basis of a future agreement, as in *Edge Moor Bridge Works* v. *Bristol*, 170 Mass. 528, and *Benton* v. *Springfield Young Men's Christian Association*, 170 Mass. 534. We cannot say that it is shown either by the language of this offer and of its acceptance, or by the conduct of the parties, that they purposed to be bound only by a subsequent formal agreement, or that they intended such a subsequent formal agreement, if it should be made, to be anything more than a convenient memorial or record of the bargain which they had already concluded. *Jones* v. *Daniel*, [1894] 2 Ch. 332. *Mississippi & Dominion Steamship Co.* v. *Swift*, 86 Maine, 248. *Bryant* v. *Ondrak*, 87 Hun, 477. This case resembles rather *Bonnewell* v. *Jenkins*, 8 Ch. D. 70, and *Rossiter* v. *Miller*, 3 App. Cas. 1124. The rights of the parties were fixed by the offer and acceptance; and their power by subsequent mutual agreement to vary or add to the terms of their bargain is not material to this question. It does not appear that there were other conditions of an intended agreement beyond those expressed in the offer and acceptance, which were still under negotiation, and without the settlement of which the parties did not intend to conclude any agreement under the doctrine stated by Lord Selborne in *Hussey* v. *Horne-Payne*, 4 App. Cas. 311, 323. It cannot be said as matter of law that the minds of these parties had not met upon a completed contract.

, Nor was the defendant's offer too uncertain and indefinite to be the foundation of a final agreement. It contemplated the renewal or extension of the first mortgage, of course upon its present rate of interest and other terms and conditions. The provision that it should be placed " for a term of years " is not too indefinite; it may be a question of law whether the words " a term of years " would be satisfied by a term of one year or would call for at least two years; but such a question of law, which would be decided in accordance with the actual intent of the parties, as shown by the words used, does not make the stip-

ulation too indefinite for enforcement. The amount to be paid on the first mortgage must be sufficient to procure its extension, that is, must be satisfactory to the mortgagee. It must be ascertained by agreement between the plaintiff and the mortgagee, and the plaintiff must undertake the burden of coming to an agreement with the mortgagee. But there is nothing impossible in this; the amount would thus become certain, and *id certum est quod certum reddi potest.* But nothing was left here to be settled by negotiations between the contracting parties, as in *May* v. *Thomson*, 20 Ch. D. 705, *Sands & Maxwell Lumber Co.* v. *Crosby*, 74 Mich. 313, and *Commercial Telegram Co.* v. *Smith*, 47 Hun, 494. The amount of the second mortgage would then be made certain by a simple computation. The stipulation that the defendant should pay to the plaintiff only $11,000 each year, out of which the interest on the mortgages and the taxes should be paid by the plaintiff and " the balance applied to the purchase price of the property," which was to be secured by the second mortgage, made the term of that mortgage sufficiently certain ; and the time for the carrying out of the agreement would be a reasonable time, which of course is not too uncertain or indefinite. We accept fully the rule that we should have here no enforceable agreement, as distinguished from mere preliminary negotiations, unless we could find a sufficiently definite and certain statement of all the essential terms which the parties then intended to introduce into their agreement; but we do not find that this offer was deficient in any of the particulars which have been pointed out by the defendant. See *Crawford* v. *Weston*, 131 Mass. 283; *Raymond* v. *Rhodes*, 135 Mass. 337 ; *Marble* v. *Standard Oil Co.* 169 Mass. 553.

The defendant has argued that the plaintiff made no acceptance of its offer. But this was plainly a question of fact for the jury.

There was evidence that the defendant on December 15 " formally and definitely stated to the plaintiff that it would decline to carry out any agreement or to complete any purchase of the property in question unless a three years' extension of the existing mortgage should be obtained." There can be no doubt that this was a breach by the defendant of its agreement, which operated to excuse the plaintiff from any further performance or

offer of performance on its part. *Smith* v. *Greene,* 197 Mass. 16, 18. *Clark* v. *Gulesian,* 197 Mass. 492, 494. *Earnshaw* v. *Whittemore,* 194 Mass. 187. *Foternick* v. *Watson,* 184 Mass. 187, 193. *Howland* v. *Leach,* 11 Pick. 151. To the same effect are *Hinckley* v. *Pittsburg Bessemer Steel Co.* 121 U. S. 264, *Ripley* v. *M'Clure,* 4 Exch. 345, and *Cort* v. *Ambergate Railway,* 17 Q. B. 127. But as it was not questioned at the trial that a fair price for the property was $100,000, the same amount which was to have been paid by the defendant, it is difficult to see how the plaintiff on its first count can recover more than nominal damages.

And as to the second count, we are of opinion that the verdict was rightly ordered. The mortgagee refused to make such an extension of the mortgage as was desired, and finally sold the property by public auction under the power of sale contained in the mortgage, for an amount which apparently was only slightly, if at all, more than enough to provide for the payment of that mortgage and the intervening charges. The evidence would not have warranted a finding that there was any conspiracy between the defendant and the mortgagee to deprive the plaintiff of its rights or to disable it from performing its contract. The mortgagee did nothing more than it had a right to do ; and the defendant committed no further breach of its agreement with the plaintiff by availing itself of the opportunity offered· by the mortgagee's action to secure the property for its own benefit, if we assume that this was what it did do, for a smaller price than that stipulated in its agreement with the plaintiff.

Nor did the defendant violate any contractual obligation to the plaintiff by desiring even with insistence that the property should be put up again by the auctioneer when, after it had been knocked down to Mr. Flattery the plaintiff's representative, he failed to secure the bargain by making the required deposit of $5,000 in cash. The mortgagee's attorney and the auctioneer had the right to refuse to receive a cashier's check instead of actual money, especially under the circumstances stated in the bill of exceptions, or to give Mr. Flattery time to procure the money thereon. Whether these circumstances could be made the ground of a bill in equity to avoid the sale is not before us. The decisions of this court are decisive against the plaintiff

here.  *Randall* v. *Hazleton,* 12 Allen, 412.  *Bradley* v. *Fuller,* 118 Mass. 239.  *O'Callaghan* v. *Cronan,* 121 Mass. 114.  *Groustra* v. *Bourges,* 141 Mass. 7.  *Roth* v. *Adams,* 185 Mass. 331.  *Taylor* v. *Finnigan,* 189 Mass. 568.  The defendant was not bound to attempt to interfere with the mortgagee's foreclosure, and had a right to buy at the sale under the power.

But as a general verdict was directed for the defendant, in accordance with the terms of the report there must be a new trial.

*So ordered.*