BEACH AND CLARRIDGE COMPANY *vs.* AMERICAN STEAM
GAUGE AND VALVE MANUFACTURING COMPANY.

Suffolk.   January 9, 1911. — March 1, 1911.

Present: KNOWLTON, C. J., LORING, BRALEY, SHELDON, & RUGG, JJ.

*Practice, Civil,* Conduct of trial: requests for rulings, judge's charge, Exceptions, Auditor's report.   *Contract,* What constitutes, Modification, Performance and breach, Construction.   *Words,* "A term of years."

Where, at the trial of an action for the alleged breach of a contract to purchase certain land, there was evidence warranting a finding that an offer in writing by the defendant to purchase the land was accepted orally by the plaintiff, a special finding by the jury that such offer was so accepted renders immaterial an exception by the defendant to a refusal by the presiding judge to rule that, if there was no unequivocal oral acceptance of the offer, a formal agreement, offered later by the plaintiff to the defendant for his signature and containing terms varying from the defendant's original offer in writing, was a counter proposition which put an end to the offer.

When an offer in writing to purchase real estate is accepted orally by the owner, a binding contract is made, which is not affected by subsequent negotiations of the parties in an effort to agree upon a modification of the contract unless such negotiations result in an agreement for such a modification.

At the trial of an action for the alleged breach of a contract to purchase certain land, where there was evidence tending to show that the defendant in writing offered to purchase the land and that one F., acting on behalf of the plaintiff with authority, orally accepted the offer and thereafter offered to the defendant for his signature a formal agreement containing terms varying from the defendant's original offer in that it provided for the payment of an additional $5,000 of the purchase price at the time of the delivery of the deed, the judge instructed the jury as follows : " If there had been an unconditional oral acceptance of the offer, then F. had a perfect right to draw up this additional suggestion or contract without impairing his rights under the oral acceptance. . . . If you find that this written contract, which was drawn up by F. [after the alleged oral acceptance], was intended by him to be an acceptance, and he thought it was an acceptance, of the contract, and it was an attempt on his part to accept it, and it was not intended by him to be a counter offer modifying the terms already in the offer, then it would not be a rejection of the offer, if it was not intended by him to be a counter offer.   If you find that he had not orally accepted the offer earlier, why, then that would not be a rejection of the offer. . . . If F. had accepted orally the offer, and was intending merely to finance the situation and try to get the other $5,000, that is not a rejection.   If, also, he thought that this written proposition which he sent was, in substance, an acceptance of it, and if he intended it to be an acceptance and did not intend to make a definite counter offer, then the right of the plaintiff to accept the offer would still remain open." *Held,* that these instructions were sufficiently favorable to the defendant.

- A letter from one corporation to another contained the following offer: " Gentlemen: I am authorized by our board of directors to offer you the sum of $100,000

for your property on Camden Street in Boston which we are now occupying on a lease, the terms to be as follows : $5,000 cash when signing papers, $5,000 cash on delivery of the deed, remainder to remain on mortgages, you to take a second mortgage with interest at 5% and arrange for renewal of first mortgage or extension of it until it can be placed for a term of years, you to pay a sufficient sum on the first mortgage in order to get it extended, payments to be arranged so that we shall pay you the sum of $11,000 per year, you to pay interest on the mortgages and taxes, and the balance to be applied to the purchase price of the property, you to pay the insurance up to the time it is transferred to us, also the taxes for the year 1903." The offer was accepted orally. *Held,* that a binding contract arose, because such offer contained a sufficiently definite and certain statement of all the essential terms which the parties then intended to introduce into their contract, and was not too indefinite to be the foundation of a final contract; affirming *Beach & Clarridge Co.* v. *American Steam Gauge & Valve Manuf. Co.* 202 Mass. 177.

Upon the acceptance by the owner of certain land of an offer by a corporation to purchase the land, one of the terms of the offer being that the owner should "arrange for renewal of first mortgage [which was in force and overdue] or extension of it until it can be placed for a term of years," a binding agreement arises, and, if the owner is ready to carry out the agreement on his part, but the corporation refuses to take the land unless the mortgage is extended for at least three years, the owner by such refusal is excused from further performance or offer of performance on his part, and is entitled forthwith to maintain an action against the corporation for breach of the agreement.

At the trial of an action for an alleged breach of a contract to purchase land, by which it was provided that the owner should "arrange for renewal of " a first mortgage then in force upon the land and overdue " or extension of it until it can be placed for a term of years," where it appeared that the purchaser refused to carry out the agreement unless the mortgage was extended for three years, an instruction to the jury that "a term of years " "means not less than two years " and that, if the owner "was able to get a mortgage for two years . . . that was a compliance with the contract in that respect," is sufficiently favorable to the purchaser, and the judge need not rule at the request of the purchaser that "three years is not an unreasonable interpretation."

The contract which arose when the owner of land subject to a mortgage accepted an offer of a corporation to purchase the land, the offer containing a provision that the owner should "arrange for renewal of first mortgage or extension of it until it can be placed for a term of years, [the owner] to pay a sufficient sum on the first mortgage to get it extended," did not require any particular or definite renewal or extension of the first mortgage, but only such a renewal or extension that it could be placed for a term of years, and that the owner should pay a sufficient sum to procure such an extension.

When at a trial a report of an auditor is introduced in evidence and contains rulings upon mixed questions of law and fact such that the rulings of law cannot be distinguished from the findings of fact, it is proper for the judge in his charge to give to the jury the correct rules of law on the subjects dealt with in the report and to instruct them to disregard that part of the report which states the law differently.

No exception lies to the refusal of the judge presiding at a trial to give a ruling which assumes as true facts which are in dispute.

A judge presiding at a trial is not bound at the request of one of the parties to single out any part of the case for comment in his charge to the jury.

CONTRACT for the alleged breach of an agreement to buy a parcel of land with the buildings thereon numbered from 208 to 220 on Camden Street in Boston. Writ in the Supreme Judicial Court dated April 8, 1904.

The case was referred to Frank N. Nay, Esquire, as auditor, who filed a report favorable to the defendant. Thereafter there was a trial before *Hammond*, J., who ordered a verdict generally for the defendant. The plaintiff alleged exceptions which were sustained in a decision reported in 202 Mass. 177.

The case was tried again before *Rugg*, J.

It appeared that in November of 1903 the plaintiff owned the premises in question subject to a mortgage for $57,000, which was overdue and was held by a corporation having its usual place of business in New York City, and subject also to a ten years' lease to the defendant, which contained an option permitting the defendant to purchase the property at any time before August 8, 1908, for $200,010; that, previous to November 25, 1903, there had been negotiations from time to time looking toward a sale of the property to the defendant. On the morning of that day, according to the testimony of Maurice Douglas Flattery, Esquire, counsel for the plaintiff in the transaction, as a result of a conversation with officers of the defendant in which he said that, if the defendant would offer to purchase the property on certain terms for $110,000, he would do his best to get the plaintiff to accept the offer, one Phillips, the secretary of the defendant, wrote to Mr. Flattery the following letter: "Boston, Nov. 25, 1903. Mr. Flattery, Dear Sir — I have been over the matter of offer for Camden St. property and our directors will not agree to pay a cent more than $100,000 and any other proposition would be useless. I herewith submit offer and beg to state that we could probably pay you for first payment 5000 more on a note if you wish to accept this offer. I can do no more with them. Sincerely, Ralph B. Phillips."

Enclosed with the letter was the "offer" therein referred to, which was as follows: "Boston, Mass., Nov. 25, 1903. Messrs. Beach & Clarridge Co., Boston, Mass. Gentlemen: I am authorized by our Board of Directors to offer you sum of one hundred thousand dollars ($100,000) for your property on Camden Street in Boston which we are now occupying on a lease, the

terms to be as follows: — $5000.00 cash when signing papers, $5000.00 cash on delivery of the deed, Remainder to remain on mortgages, you to take a second mortgage with interest at 5% and arrange for renewal of first mortgage or extension of it until it can be placed for a term of years, you to pay a sufficient sum on the first mortgage in order to get it extended, payments to be arranged so that we will pay you the sum of $11,000 per year, you to pay interest on the mortgages and taxes, and the balance to be applied to the purchase price of the property, you to pay the insurance up to the time it is transferred to us, also the taxes for the year 1903. Respectfully submitted, American Steam Gauge & Valve Mfg. Co., by Ralph B. Phillips Sec'y."

Mr. Flattery further testified that, upon receiving the offer, he called a meeting of the plaintiff's board of directors, that they accepted the offer, and that, from the room where the directors were present and in their hearing, he called up Phillips on the telephone. As to the ensuing telephone conversation, he testified: " I told him that the board of directors, that were present in the room while I was speaking, they had formally voted to accept the offer and they so instructed me to say, — to notify the American Steam Gauge and Valve Company that we accepted the offer, but, as between him and me, — a personal matter, — I would look to him to try and get the extra $5,000 which he promised in the personal letter accompanying his offer." The plaintiff's board of directors were present when the telephone conversation took place and it was with their authority. Phillips replied, " Now that we got together on the purchase and sale, I will do my best to get the $5,000. I think I will be able to fix that up this evening."

Mr. Flattery at once entered into negotiations with the mortgagee for an extension of the mortgage. On November 25, Mr. Flattery sent to the defendant a formal agreement, which contained provisions for the payment by the defendant of $5,000 on the signing of the agreement and $10,000 on the delivery of final papers. In conference later with Phillips and the defendant's counsel, Walter A. Webster, Esquire, the counsel suggested a number of changes in the formal agreement, and Mr. Flattery testified that he said to Mr. Webster, " What is the use of trying to change this now when you have made a written offer which

we have accepted?" that Mr. Webster turned to Phillips and said, " Have you made an offer on this property ?" and he said, " Yes ; we made an offer last Wednesday." Shortly after that Mr. Flattery went to his own office and mailed to the defendant about one o'clock that day a letter as follows: " Boston, Dec. 1, 1903. American Steam Gauge & Valve Co., 212 Camden St., Boston, Mass. Gentlemen : — In reply to your letter of November 25th 1903, offering us a sum of $100,000 (one hundred thousand dollars) for our property, which you now occupy — I am authorized by our Board of Directors to accept your offer on the terms proposed by you and we hold ourselves in readiness to sign formal agreements and make a deed of the property. Yours truly, Beach & Clarridge Co. of Boston by M. Douglas Flattery, Counsel for Beach & Clarridge Co."

Mr. Flattery further testified that he called at Mr. Webster's office again that day, a little after three o'clock, and Mr. Webster and Phillips were there. Mr. Webster then handed to him a letter reading as follows: " Boston, Mass. Dec. 1, '03. The Beach & Clarridge Co., C/o M. Douglas Flattery, #8 Beacon St., Boston. Dear Sirs : — The offer which I made to the Beach & Clarridge Company on Nov. 25, 1903 regarding the purchase of their property on Camden Street, Boston, Mass., I hereby withdraw as this offer has not been accepted. Yours truly, Ralph B. Phillips." Mr. Flattery refused to receive the letter on behalf of the plaintiff.

Subsequently the defendant refused to purchase the property from the plaintiff unless an extension of the mortgage for three years could be obtained. Thereupon the mortgagee foreclosed the mortgage by sale and the defendant purchased at the sale

Much of the testimony of Mr. Flattery was controverted by witnesses for the defendant.

At the close of the evidence, the defendant asked for the following rulings, among others:

" 5. If the plaintiff accepts the offer (or makes an attempt to accept it) with any condition, change, or modification, this constitutes in law a new proposal, and is a rejection of the original offer.

" 6. The plaintiff, having once rejected the offer, cannot afterwards revive it by tendering an acceptance of it; a rejection puts an end to the original offer.

" 7. If you find that the plaintiff did not make an unequivocal oral acceptance of the defendant's offer, the agreement executed by the plaintiff and sent to the defendant on November 25 was a counter proposition which put an end to the offer.

" 8. The continued negotiations of the parties after November 25 in an attempt to reach an agreement upon terms not included in the original offer put an end to the defendant's offer."

" 12. A term of years cannot mean less than two years, and three years is not an unreasonable interpretation."

" 14. A refusal of the defendant to accept anything less than a three years' extension of the mortgage was reasonable and did not constitute a breach of its agreement."

" 27. The best test of the fair market value is the amount which the property would bring where the seller wants to sell and the purchaser wants to buy.

" 28. In considering the amount received for the property at the foreclosure sale you may consider the fact that the sale was not extensively advertised; that no effort was made to secure bidders and that there were only two bidders, as bearing upon the question whether it was a true criterion of the value of the property.

" 29. The price of $100,000, agreed upon by the parties, is evidence of the value of the property.

" 30. It is for you to find whether the defendant's offer was given and continuing on December 1, or whether the parties, by their negotiations upon terms differing from those of the defendant's offer, treated it as at an end and were trying to reach a new agreement upon other terms.

" 31. If you find that the defendant told the plaintiff before December 1 that it would not accept any extension of the mortgage for less than three years, then you may find that that was notice to the plaintiff that the defendant did not intend to be any longer bound by its offer for an extension for a less time."

The plaintiff asked for the following rulings:

" 1. If there was an acceptance by telephone on November 25 of the offer contained in the defendant's letter of that day, that constituted a binding contract.

" 2. Neither the formal agreement signed by the plaintiff and sent to the defendant on November 25, nor the subsequent ne-

gotiations for an additional payment of $5,000, amounted, as a matter of law, to a rejection of the offer contained in the defendant's letter of November 25.

" 3. Even if there were no oral acceptance of the offer, the letter of acceptance on behalf of the plaintiff on December 1 was a good acceptance and made a binding contract.

" 4. The letter of Mr. Phillips to Mr. Flattery on December 1 was not a revocation of the offer contained in the defendant's letter of November 25.

" 5. If the letter of December 1, accepting the contract, was put into the mail before the letter of revocation was served on Mr. Flattery on that day, the attempted revocation was ineffective, and the defendant's offer of November 25 became a binding contract.

" 6. By the terms of the contract the plaintiff was not bound to obtain an extension for three years of the existing mortgage, but only a temporary extension to enable a mortgage for a term of years to be arranged, and an extension for one year was sufficient.

" 7. Under the terms of the contract the defendant was not entitled to insist upon an extension for three years of the existing mortgage.

" 8. If the defendant refused to accept anything less than an extension for three years of the existing mortgage the plaintiff was excused from further performance and is entitled to recover.

" 9. That the jury be instructed to disregard those portions of the auditor's report to the effect that the agreement prepared by Mr. Flattery and the modifications made on behalf of the plaintiff in the offer received from the defendant on that day amounted to a rejection of the offer so that the offer was no longer open, and that a direct and unequivocal acceptance would have left the plaintiff's company in no position to seek this modification if the bargain had been previously closed, and also to disregard so much of the report as construes the offer of November 25, and particularly that part which says that the extension referred to in the offer cannot mean less than two years.

" 10. That upon the facts stated in the auditor's report the ruling that there was no legal and binding contract was erroneous, and must be disregarded."

On the subject matter of the twelfth ruling asked for by the defendant, and the sixth ruling asked for by the plaintiff, the single justice charged the jury as follows: "If you find that there was an acceptance, either orally, or, if not oral, written, then you proceed to the consideration of the second branch of the case, which is whether the defendant broke this contract. And as that involves a consideration of just what each party was obliged to do under the contract, therefore I invite your attention somewhat critically to the terms of this offer. It was for a gross price of $100,000 — $5,000 to be paid down and $5,000 to be paid on the delivery of the deed, and the proceeds of the remainder to remain on mortgage, 'you to take a second mortgage with interest at five per cent and arrange for a renewal of the first mortgage, or an extension of it, until it can be placed for a term of years.' Now that means either a renewal of the first mortgage for the term which it originally ran, — and about that there is no dispute, as I recall it now, so I think you need not trouble yourselves about that aspect of the case, but proceed to the second question which is 'either an extension or a renewal of it until it can be placed for a term of years.' Now that does not mean that the plaintiff agreed to get continued this particular mortgage held by the Cannabis Company of New York. It simply means that this plaintiff agreed to get an extension of that mortgage until it could get either that mortgage extended for two years or a new mortgage for two years. That is, the plaintiff would have performed its contract if it had this New York lawyer's client's extension for a week or a day, provided within that time it could get the mortgage placed for a term of years somewhere else. It might have gone to another savings institution or to an individual and got a mortgage for two years. That would have complied with the terms of the contract. It was necessary that it should get this mortgage extended, which was overdue at the time the contract was made, or that it should get a mortgage for this amount placed for a term of years. I instruct you that than means not less that two years, and if it was able to get a mortgage for two years, — if you find upon all the evidence that it could, that was a compliance with the contract in that respect. Now it was to get the mortgage extended in view of this contract; that is, the mortgage was $57,000; the

contract itself provided that there was at least $10,000 to be paid before it was obliged to get the mortgage extended; so that the defendant's obligation was only to get a mortgage for $47,000, instead of the face value of $57,000 which existed at the time the contract was made. Of course, it would have complied with the contract by getting a mortgage for $57,000, but it was not obliged to do so, because if the other side performed its contract to pay $10,000 the plaintiff would have that in hand with which to reduce the principal of that second mortgage. So that you may find on the evidence that these New York parties would not extend for two years for $57,000, or more than one year or six months; it is still open for you to find that the plaintiff was able to perform its part by getting its mortgage placed somewhere else; so that the defendant would have had only a total mortgage indebtedness on the property for $90,000. Now it is necessary for you to find that the plaintiff was able, would have been able if the other side carried out its contract, to place mortgages in the aggregate for $90,000. So you see the first mortgage would have to run for at least two years. Now you are to find whether the plaintiff was in a position to do that. You have a right to take into account the fact that he wrote a letter for the purpose of getting $10,000 to carry out that part of its contract. You are to take that and all the other circumstances. There was some evidence as to the opinion of witnesses as to how easy it would have been to get a mortgage placed for that period of time for $47,000. Mr. Flattery gave some testimony on the stand. His opinion was about the ease with which he could do that had the contract been carried out by the other side."

The other rulings asked for by the defendant were refused.

On the question of damages, the single justice charged the jury as follows in part: " Now the rule of damages is this: The plaintiff is entitled to recover the difference between the contract price of $100,000 and the fair market value of the property, if it was less than $100,000. If you find, for instance, merely by way of illustration, if you find that the price this property brought at auction was $60,000, and was the fair market value of the property, then your verdict should be for the plaintiff for the difference between $100,000 and $60,000.

If you find, on the other hand, the property was worth $100,000, or over, then the plaintiff has really suffered no damages because of that oral contract with the defendant, because the property was worth just as much to it. Therefore, if you find that, you would bring in only one dollar nominal damages. Now the fixed point on that side is the contract price of $100,000, and you are to find, upon all the evidence, what was the fair market price of this property. Now the fair market value is what an owner who is willing to sell, and is not obliged to sell, and a purchaser who is under no obligation to buy, but is willing to buy, — what price both would agree upon, — what one would sell and the other would buy for. You have various items of evidence respecting the market value of this property, which will aid you in coming to a conclusion on this point. You have, first, what the property brought at the foreclosure sale, and you have a right to take into account, and ought to take into account in weighing the worth of that evidence, the circumstances under which the sale occurred. It was a mortgagee's sale. You know what that means; perhaps some arguments have been addressed to you about it. You are to take into account, in connection with this sale, the particular circumstances under which this sale was had, and you will recall the evidence from the mortgagee, from the attorney in New York, as to how extensively this sale was advertised."

The single justice also submitted to the jury the special question, " Was the offer of November 25, 1903, accepted orally by the plaintiff?" The jury answered the question "Yes," and found for the plaintiff in the sum of $46,446. The defendant alleged exceptions.

*G. W. Anderson, (E. H. Ruby* with him,) for the defendant.
*H. E. Warner, (J. A. Crane* with him,) for the plaintiff.

SHELDON, J.   The jury have found, as upon the evidence they had a right to find, that the defendant's written offer of November 25, 1903, was accepted orally by the plaintiff. *Beach & Clarridge Co.* v. *American Steam Gauge & Valve Manuf. Co.* 202 Mass. 177, and cases cited. This makes the defendant's seventh request for instructions immaterial, and the exception to its refusal need not be considered.

No exception appears to have been saved to the refusal of the

defendant's fifth and sixth requests, so far as they were not given. At any rate, they were made immaterial by the finding already stated.

The defendant's eighth and thirtieth requests were rightly refused. There was nothing inconsistent in the plaintiff's acceptance of the defendant's offer and the conclusion thereby of a binding agreement with the effort afterwards to procure modifications of that agreement. Such modifications or an abandonment or abrogation of the agreement could be made only with the concurrence of both parties. *Richardson Shoe Machinery Co.* v. *Essex Machine Co.* 207 Mass. 219, 223, 224.

But the defendant contends that this finding was made upon rulings of which some were erroneous and others were insufficient and misleading. We have examined the instructions given with the evidence on which they were based, in the light of the very able argument addressed to us by the counsel for the defendant; and we are clearly of opinion that the instructions were full and accurate. Flattery's evidence upon this issue was plain and direct. The evidence for the defendant simply left this a question of fact. And the question was fairly left to the jury. The single justice said to them: "If there had been an unconditional oral acceptance of the offer, then Mr. Flattery had a perfect right to draw up this additional suggestion or contract without impairing his rights under the oral acceptance. If however he did not intend to accept orally, but intended to make a different and counter proposition, why then that amounted to a rejection of the original offer. If you find that this written contract, which was drawn up by Mr. Flattery on the afternoon of November 25, was intended by him to be an acceptance, and he thought it was an acceptance, of the contract, and it was an attempt on his part to accept it, and it was not intended by him to be a counter offer modifying the terms already in the offer, then it would not be a rejection of the offer, if it was not intended by him to be a counter offer. If you find that he had not orally accepted the offer earlier, why then that would not be a rejection of the offer. . . . If Mr. Flattery had accepted orally the offer and was intending merely to finance the situation and try to get the other $5,000, that is not a rejection. If, also, he thought that this written proposition which he sent was, in

substance, an acceptance of it, and if he intended it to be an acceptance and did not intend to make a definite counter offer, then the right of the plaintiff to accept the offer would still remain open." This was sufficiently favorable to the defendant. The jury were not allowed, as the defendant has argued, to find an oral acceptance merely upon proof that Flattery intended to make it; they were told not to make the finding unless Flattery did so intend, which is a very different thing.

The defendant's thirty-first request also is made immaterial by the special finding. Of course an offer cannot be withdrawn after its acceptance.

Undoubtedly the plaintiff was bound to undertake the burden of coming to an agreement with the mortgagee so as to secure a renewal or extension of the first mortgage until it could be placed for a term of years. The single justice so ruled. But the refusal which the jury must have found was made by the defendant, to accept a deed unless the mortgage was extended or placed for a term of three years excused the plaintiff from making any further attempt to carry out its part of the contract. The law requires no vain or idle performance. This was not a mere anticipatory breach by the defendant; it operated also to excuse all further performance upon the other side, and entitled the plaintiff to recover, if the jury found that the plaintiff, provided that the defendant had been willing to comply with the agreed terms, would have carried out the agreement on its part. This was expressly decided when the case was formerly before us in 202 Mass. 177, 183, 184. As in *Boyd* v. *Taylor*, 207 Mass. 335, it is now the settled law of the case and needs no further discussion. It follows that the defendant's fourteenth request was rightly refused, and the rulings made were correct.

For the reasons already stated, the plaintiff's first and seventh requests were rightly given; its eighth request was properly dealt with; and upon the special finding the questions raised upon the plaintiff's third, fourth and fifth requests are now immaterial.

The defendant's twelfth request was given so far as it properly could have been.

The instructions given upon the plaintiff's sixth request were correct. The agreement required no particular or definite

renewal or extension of the first mortgage, but only such a renewal or extension that it could be placed for a term of years, and that the plaintiff should pay a sufficient sum to procure such an extension. This was the express language of the offer which the defendant made and the plaintiff accepted.

The instructions given upon the plaintiff's ninth and tenth requests were correct. An auditor's findings upon matters of fact are *prima facie* evidence. Upon a mixed question of law and fact, where the rulings cannot be distinguished from the findings, it may well be that the court cannot rule peremptorily that the jury must disregard any part of the report; but any bald rulings of law should be passed upon and if necessary corrected by rulings at the trial. *Fisher* v. *Doe*, 204 Mass. 34, 40. In a case like the one at bar, this could best be done by giving the jury the correct rule of law and instructing them to disregard that part of the report which stated the law differently. This was the course adopted.

The jury plainly could infer from the facts in evidence that but for the defendant's refusal to accept anything short of a three years' extension of the mortgage the plaintiff would have been able and ready to carry out the agreement as made.

As to damages, it was not assumed at this trial, as formerly it had been, that the market value of the property was the same as the price agreed upon. The defendant's president testified that its officers did not regard that price as representing the value of the property, but that it was what under the existing circumstances they were willing to pay for it rather than to lose their leasehold estate or continue to pay the agreed rent. It was a fair inference from his testimony that the defendant then agreed with the plaintiff's present contention that the real value was considerably less than the agreed price. The question was for the jury; and we can look only at the exceptions which were saved at the trial.

The defendant's twenty-seventh request was given in substance. Its twenty-eighth request assumed facts as true which were themselves in dispute. It could not have been given as framed. The trial judge was not bound to single out one part of the case for comment, as was called for by the twenty-ninth request. And both these questions were properly covered by

the rulings given. The reference in the charge to the "taxable value" of the property was not excepted to. The evidence as to this came in without exception, and indeed seems to have been drawn, without any restriction as to its purpose, from one of the plaintiff's witnesses by the defendant in cross-examination. Under such circumstances we should hesitate to sustain an exception to this part of the charge if the question had been saved.

We do not find that there was any error at the trial.

*Exceptions overruled.*