THOMAS H. PETERSON *vs.* HOWARD C. HOPSON & others.

Middlesex. November 17, 1939. — September 17, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Equity Pleading and Practice*, Rehearing, Report, Demurrer, Bill. *Jurisdiction*, Power of one judge respecting interlocutory action by another judge. *Superior Court*, Jurisdiction. *Supreme Judicial Court*, Jurisdiction. *Trust*, Shareholder's bill. *Equity Jurisdiction*, Fiduciary relation, Shareholder's bill.

After a demurrer by one of the defendants to a bill in equity in the Superior Court had been overruled, a motion by that defendant for a report thereof had been denied and an amendment of the bill not affecting the case stated therein against that defendant had been allowed, it was within the power of another judge of that court to consider and overrule a demurrer by that defendant to the amended bill raising the same questions of law as the first demurrer and thereupon to report those questions to this court.

Discussion by LUMMUS, J., of the power of a judge to vacate or modify previous interlocutory action by another judge of the same court.

Allegations in a bill in equity by a holder of a certificate of beneficial interest in a trust, setting forth a series of instances wherein two defendants having a fiduciary relation to the trust profited at its expense with the assistance of other defendants, were not too vague and indefinite.

Upon a report of the overruling of a demurrer to a bill in equity, this court had the discretionary power to postpone consideration of the question of the sufficiency of the allegations of the bill in certain respects until the facts should have been established, and took that course without prejudice to the subsequent presentation of that question.

A bill in equity seeking relief against alleged improper profit making by two of the defendants, in breach of a fiduciary duty owed by them,

with the assistance of other defendants, was not multifarious in setting forth a series of different instances of such conduct, the assisting defendants not being the same in all instances.

A holder of preferred shares of beneficial interest in a trust, entitled to receive cumulative dividends and a specified sum per share in liquidation in priority to payments to the holders of other classes of shares, could maintain a suit in equity for relief against improper profit making by the defendants at the expense of the trust even if the remaining assets thereof were then sufficient to afford the plaintiff his rights as a preferred shareholder if liquidation should then occur and even if he became a shareholder after the alleged wrongdoing took place.

BILL IN EQUITY, filed in the Superior Court on January 7, 1939, and afterwards amended.

The suit was reported by *Greenhalge, J.*

*F. P. Garland,* (*H. Guild* with him,) for the defendants Cheney and others.

*R. G. Dodge,* for the defendants Greene and another.

*Lee M. Friedman,* for the defendant Furber.

*R. S. Warner,* (*T. D. Lavelle* with him,) for the plaintiff.

LUMMUS, J. On February 27, 1939, the plaintiff's first motion to amend his bill by substituting a new draft was allowed. The defendants Hopson and Mange were not residents of the Commonwealth, were not served with process, and did not appear. The other defendants demurred. On March 30, 1939, an interlocutory decree was entered by a judge of the Superior Court, overruling the demurrer. On April 1, 1939, the demurring defendants appealed. On April 6, 1939, the judge denied the motion of the demurring defendants that the case be reported under G. L. (Ter. Ed.) c. 214, § 30. On July 19, 1939, an amendment to the bill was allowed "without prejudice to the right of any party named as defendant to demur." This amendment did not affect the case of the plaintiff for relief against the defendants other than Hopson and Mange, but related to the right of the plaintiff to reach assets of Hopson and Mange in this Commonwealth. On July 28, 1939, the same defendants other than Hopson and Mange again demurred to the bill as last amended, on the same grounds that were taken in the earlier demurrer. A second judge of the Superior Court, on September 15, 1939, entered

a decree, reciting that "it appearing to the court that said demurrer raises no questions beyond those raised by the demurrer to the bill as amended on February 27, 1939, and which demurrer has been overruled," and ordering the later demurrer overruled. He then reported the case under G. L. (Ter. Ed.) c. 214, § 30. The plaintiff has moved in this court for dismissal of the report, on the ground that the questions raised by the second demurrer had already been decided upon the first demurrer, subject only to appeal, and that the second judge had no power to reconsider those questions or to present them to us by report.

Where there has been no change of circumstances, a court or judge is not bound to reconsider a case, an issue, or a question of fact or law, once decided. *Nerbonne* v. *New England Steamship Co.* 288 Mass. 508, 510. *Hayes* v. *Hurley*, 292 Mass. 109, 111, 112. *Castle* v. *Madison*, 113 Wis. 346, 350. A question of law not seasonably and properly saved, cannot be revived by the simple expedient of bringing it forward again, demanding a second ruling, and claiming an exception or appeal from that second ruling. *Caverly* v. *McOwen*, 126 Mass. 222, 224. *Sullivan* v. *Boston Bar Association*, 170 Mass. 504. *Robbins* v. *Brockton Street Railway*, 180 Mass. 51. *Blackburn* v. *Boston & Northern Street Railway*, 201 Mass. 186, 189. *Phillips* v. *Director General of Railroads*, 251 Mass. 263, 268. *Commonwealth* v. *Clifford*, 254 Mass. 390, 393. *Blankenburg* v. *Commonwealth*, 260 Mass. 369, 376. *Barnes* v. *Springfield*, 268 Mass. 497, 502. *Second National Bank of Malden* v. *Leary*, 284 Mass. 321, 324. *Long* v. *George*, 296 Mass. 574, 579, 580. *Arabia* v. *John Hancock Mutual Life Ins. Co.* 301 Mass. 397, 400–401. *Conboy* v. *First National Bank of Jersey City*, 203 U. S. 141, 145. *Wayne United Gas Co.* v. *Owens-Illinois Glass Co.* 300 U. S. 131, 137. These propositions have many illustrations. This court usually declines to reconsider questions decided upon an earlier appeal in the same case. *Pingree* v. *Coffin*, 12 Gray, 288, 324. *Wall* v. *Old Colony Trust Co.* 177 Mass. 275, 279. *Boston Bar Association* v. *Casey*, 204 Mass. 331, 336. *Beach & Clarridge Co.* v. *American Steam Gauge &*

*Valve Manuf. Co.* 208 Mass. 121, 132. *Taylor* v. *Pierce Brothers, Ltd.* 220 Mass. 254. *Rubenstein* v. *Lottow,* 223 Mass. 227, 234. *Clark* v. *New England Telephone & Telegraph Co.* 231 Mass. 546, 548. *Pizer* v. *Hunt,* 253 Mass. 321, 333. *Massachusetts Gasoline & Oil Co.* v. *Go-Gas Co.* 267 Mass. 122, 129. *Lunn & Sweet Co.* v. *Wolfman,* 268 Mass. 345, 349. *Cann* v. *Barry,* 298 Mass. 186. After a decision of this court, a party has no right to a rehearing. *Powers* v. *Sturtevant,* 200 Mass. 519. A judge sitting without a jury need not entertain a motion for a new trial based on the ground that the finding was against the evidence or the weight of the evidence. *O'Grady* v. *Supple,* 148 Mass. 522. *Menici* v. *Orton Crane & Shovel Co.* 285 Mass. 499, 502. *Nerbonne* v. *New England Steamship Co.* 288 Mass. 508, 510. *Sullivan* v. *Boston Bar Association,* 170 Mass. 504. A motion for a new trial or to vacate a judgment need not be entertained when based upon alleged errors of law that either were raised or could have been raised at the trial. *Commonwealth* v. *Morrison,* 134 Mass. 189, 190. *Garrity* v. *Higgins,* 177 Mass. 414. *Loveland* v. *Rand,* 200 Mass. 142, 144. *Ryan* v. *Hickey,* 240 Mass. 46. *Commonwealth* v. *Cero,* 264 Mass. 264, 275. *Barry* v. *Alton Rubber Co.* 274 Mass. 18. *Nerbonne* v. *New England Steamship Co.* 288 Mass. 508, 510. *Commonwealth* v. *DiStasio,* 294 Mass. 273, 287, 288. After the denial of one motion, a second motion based on the same grounds need not be entertained. *Commonwealth* v. *Ruisseau,* 140 Mass. 363. *Boston Bar Association* v. *Casey,* 227 Mass. 46, 49. *Barry* v. *Alton Rubber Co.* 274 Mass. 18.

It is true that in equity the propriety of an interlocutory decree from which no appeal was taken is nevertheless open upon appeal from a final decree affected by it. G. L. (Ter. Ed.) c. 214, § 27. *Gibbons* v. *Gibbons,* 296 Mass. 89. *Dodge* v. *Anna Jaques Hospital,* 301 Mass. 431, 432. *Weiner* v. *Pictorial Paper Package Corp.* 303 Mass. 123, 127–128. *Victor Talking Machine Co.* v. *George,* 105 Fed. (2d) 697. But it does not follow that the judge entering the final decree is bound to review and reconsider every earlier decree entered by himself or another judge. The appeal

from the final decree appears to reach farther than the alleged errors of the judge who entered it. *Potts* v. *Haverstraw*, 93 Fed. (2d) 506, 509, 510. *United States* v. *Steinberg*, 100 Fed. (2d) 124, 125. *Weiner* v. *Pictorial Paper Package Corp.* 303 Mass. 123, 127–128.

A pleading amended after demurrer ordinarily presents a new question to be decided on demurrer without reference to the decision earlier made on demurrer to the pleading before amendment. *Calder* v. *Haynes*, 7 Allen, 387. *Cronan* v. *Woburn*, 185 Mass. 91, 95. *Cole* v. *Wells*, 224 Mass. 504, 512. *Corbett* v. *Gallagher*, 225 Mass. 480, 482. *West* v. *H. J. Lewis Oyster Co.* 99 Conn. 55, 67, 68. *Darling* v. *Blazek*, 142 Iowa, 355. *Lanz* v. *Schumann*, 175 Iowa, 542, 545. *Parks* v. *Monroe*, 99 Kans. 368, 371. *Miles* v. *Hamilton*, 106 Kans. 804. *Wells* v. *Dane*, 101 Maine, 67. *First State Bank of Mountain Lake* v. *C. E. Stevens Land Co.* 119 Minn. 209, 215, 216. *United States Fidelity & Guaranty Co.* v. *Pullen*, 230 Wis. 137, 141. But a sufficient reason for denying a motion to amend is that the proposed amendment will not materially improve the pleading. *Massachusetts Gasoline & Oil Co.* v. *Go-Gas Co.* 267 Mass. 122, 126. Compare *Corbett* v. *Gallagher*, 225 Mass. 480, 482. Where, as in the present case, the amendment is wholly foreign to the case against the demurrants, and leaves the case stated against them unchanged, it is possible that a judge could overrule the demurrer to the amended bill *pro forma* without reconsideration of what had been decided on demurrer prior to the amendment, and possibly without affording the demurrants a new right of appeal. That course was adopted by a district court in *Meeker* v. *Lehigh Valley Railroad*, 175 Fed. 320; but an appeal was actually prosecuted and the decision was reversed, the report stating that the amended bill was "regarded as containing materially different facts." 183 Fed. 548, 550. See also *Calder* v. *Haynes*, 7 Allen, 387; *Miles* v. *Hamilton*, 106 Kans. 804, 805, 806; *People* v. *Opie*, 304 Ill. 521, 522, 523.

Though there is no duty to reconsider a case, an issue, or a question of fact or law, once decided, the power to do so remains in the court until final judgment or decree.

*Calder* v. *Haynes,* 7 Allen, 387. *Waucantuck Mills* v. *Magee Carpet Co.* 225 Mass. 31, 33. *Cinamon* v. *St. Louis Rubber Co.* 229 Mass. 33, 37. *Sallinger* v. *Hughes,* 235 Mass. 104, 107. *Goulis* v. *Judge of District Court,* 246 Mass. 1, 8. *Clark* v. *McNeil,* 246 Mass. 250, 256, 257. *Conway* v. *Kenney,* 273 Mass. 19, 23. *Hopkinton* v. *B. F. Sturtevant Co.* 285 Mass. 272, 276. *Bucholz* v. *Green Bros. Co.* 290 Mass. 350, 354. *Nickerson* v. *Allen,* 293 Mass. 136, 138. *Nelson* v. *Bailey,* 303 Mass. 522, 525. Even without re-hearing, a judge may modify a decision already announced, so long as the case has not passed beyond the power of the court. *Jamnback* v. *Aamunkoitto Temperance Society, Inc.* 273 Mass. 45, 50. *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398, 409, 410. See *Commissioner of Insurance* v. *Broad Street Mutual Casualty Ins. Co., ante,* 362, 365; *Karrick* v. *Wetmore,* 210 Mass. 578, 579. The law of the case, in the primary meaning of that expression, does not deny the power of an appellate court to reconsider a point determined upon an earlier appeal in the same case. *Messenger* v. *Anderson,* 225 U. S. 436, 444. *Southern Railway* v. *Clift,* 260 U. S. 316, 319. *Wichita Royalty Co.* v. *City National Bank of Wichita Falls,* 306 U. S. 103. *Cochran* v. *M & M Transportation Co.* 110 Fed. (2d) 519. *Connett* v. *Jerseyville,* 110 Fed. (2d) 1015, 1018.

An undertaking, or an exercise of discretion, to reconsider a matter once decided, is not shown by a mere denial of a second motion purporting to raise it. That may signify merely a refusal to reconsider the matter. *Commonwealth* v. *Millen,* 290 Mass. 406, 408. *Ross* v. *Colonial Provision Co. Inc.* 299 Mass. 39, 42.

If a judge does reconsider a matter once decided, the question whether the right to exceptions or appeal exists upon the reconsideration may not be fully settled. In older cases the right seems to be denied, at least in certain classes of cases. *Kidney* v. *Richards,* 10 Allen, 419. *Whittaker* v. *West Boylston,* 97 Mass. 273. *Aldrich* v. *Springfield, Athol & North Eastern Railroad,* 125 Mass. 404. *Dearborn* v. *Mathes,* 128 Mass. 194, 196. Later cases intimate rather than decide the contrary. *Loveland* v. *Rand,* 200 Mass.

142, 146 (compare *Ramsay* v. *LeBow*, 220 Mass. 227, 229).
*Ryan* v. *Hickey*, 240 Mass. 46, 48. *Moskow* v. *Burke*, 266
Mass. 286, 290. *Kelley* v. *Jordan Marsh Co.* 278 Mass. 101,
109. *Commonwealth* v. *McKnight*, 289 Mass. 530, 543, 544.
*Commonwealth* v. *Millen*, 290 Mass. 406, 408. *Ross* v.
*Colonial Provision Co. Inc.* 299 Mass. 39, 42. It has been
held that a judge who undertakes to reconsider such a
matter must hear it through. *Union Trust Co. of Spring-
field* v. *Magenis*, 266 Mass. 363, 365. *Union Trust Co. of
Springfield* v. *Kittredge*, 298 Mass. 515. Without attempt-
ing any definitive statement of the law, it is enough to say
that no earlier decision is controlling as to the present case.
Although the judge recited in substance that the demurrer
after the amendment raised no new question, he intended
to revive the questions already decided to the extent neces-
sary to enable them to be reported to this court. His
purpose of saving to the defendants their questions of law
was not improper. *Granger* v. *Lovely*, 302 Mass. 504, 506–
507. In our opinion what he did was within the power
of the Superior Court.

It is immaterial that the report of the questions arising
on the demurrer after the amendment was made by a judge
other than the one who overruled the demurrer to the
bill before the amendment. All the judges of the Superior
Court have equal powers, and in most matters each is
vested with all the powers of the court. *Catheron* v. *County
of Suffolk*, 227 Mass. 598. *Reno* v. *Cotter*, 236 Mass. 556,
560. *Beal* v. *Lynch*, 242 Mass. 65, 68. *Commonwealth* v.
*Gedzium*, 261 Mass. 299. *Fanciullo* v. *B. G. & S. Theatre
Corp.* 297 Mass. 44, 50, 51. A judge should hesitate to
undo his own work. *Clark* v. *McNeil*, 246 Mass. 250, 256,
257. Still more should he hesitate to undo the work of
another judge. *Barringer* v. *Northridge*, 266 Mass. 315,
320. *Second National Bank of Malden* v. *Leary*, 284 Mass.
321, 324. *Lane* v. *J. W. Lavery & Son, Inc.* 294 Mass. 288,
293. But until final judgment or decree there is no lack of
power, and occasionally the power may properly be exer-
cised. The judge whose action is vacated may be dead,
or retired, or ill, or engrossed in work at a remote place.

In some jurisdictions, particularly in New York and the Second Federal Circuit, it has been declared that a judge lacks power to vacate or modify an interlocutory decree or order of another judge. *Heischober* v. *Polishook*, 152 App. Div. (N. Y.) 193. *Endurance Holding Corp.* v. *Kramer Surgical Stores, Inc.* 227 App. Div. (N. Y.) 582. *Henry* v. *New York Post, Inc.* 168 Misc. (N. Y.) 247. *Commercial Union of America, Inc.* v. *Anglo-South American Bank, Ltd.* 10 Fed. (2d) 937. *Hardy* v. *North Butte Mining Co.* 22 Fed. (2d) 62 (Ninth Circuit). *In re Hines,* 88 Fed. (2d) 423. The practice in New York and the Second Federal Circuit may have been influenced by provisions of the New York Code for appeals from interlocutory orders, and by judicial scandals in New York shortly before 1870 resulting from the action of some judges in vacating interlocutory orders made by others. See *Riggs* v. *Pursell,* 74 N. Y. 370, 378, 379; *Belmont* v. *Erie Railway,* 52 Barb. 637; *Reynolds* v. *Iron Silver Mining Co.* 33 Fed. 354. An assertion that one judge lacks power to vacate the interlocutory order of another was made in this Commonwealth in *dicta* in *Barringer* v. *Northridge,* 266 Mass. 315. But the actual decision in that case can be rested on the final, as distinguished from interlocutory, nature of the action that the judge described in that case as the "second judge" took. In other words, the case was one of *res judicata. Hyde Park Savings Bank* v. *Davankoskas,* 298 Mass. 421, 424, 425. The *dicta* in *Barringer* v. *Northridge* are inconsistent with the decision in *Beal* v. *Lynch,* 242 Mass. 65, in which in fact the successive conflicting orders were made by different judges. Later cases in the Second Federal Circuit tend toward what we consider the sound rule, that another judge has all the powers that the judge who originally acted would have. *Cherry* v. *Howell,* 66 Fed. (2d) 713. *United States* v. *Steinberg,* 100 Fed. (2d) 124, 125. That rule is supported by the weight of authority generally, and in our opinion is the law of this Commonwealth. *Crim* v. *Kessing,* 89 Cal. 478. *Haines* v. *Commercial Mortgage Co.* 206 Cal. 10. *Rice* v. *Van Why,* 49 Colo. 7. *Wiggin* v. *Federal Stock & Grain Co.* 77 Conn. 507, 516. *Fitzgerald* v. *Merard Hold-*

*ing Co.* 106 Conn. 475, 479, 480. *Fort Dearborn Lodge No. 214* v. *Klein,* 115 Ill. 177, 181. *Marshall Field & Co.* v. *Nyman,* 285 Ill. 306. *Shaw* v. *Dorris,* 290 Ill. 196, 204. *Niagara Fire Ins. Co.* v. *Scammon,* 35 Ill. App. 582. *Beckstrom* v. *Krone,* 125 Ill. App. 376. *Seery* v. *Murray,* 107 Iowa, 384, 390. *Madden* v. *Glathart,* 115 Kans. 796, 801. *Perry* v. *Baker,* 61 Neb. 841. *Strehlow* v. *Fee,* 36 N. D. 59, 64, 65. *Shephard* v. *Gove,* 26 Wash. 452. The action taken by the judge upon the demurrer after the amendment was within his power, and its correctness comes before us properly on his report.

The plaintiff, according to the bill, is the holder of a transferable certificate of beneficial interest consisting of $5.50 dividend series preferred shares, in a trust called New England Gas and Electric Association, created by declaration of trust dated December 31, 1926. It does not appear when he obtained his preferred shares, nor whether he obtained them directly from the Association, or from the defendants Hopson and Mange, or otherwise. Whether he was the owner of them at the time of the acts complained of, does not appear.

The declaration of trust of New England Gas and Electric Association empowered the trustees in broad terms to invest the trust property in and to deal in, shares, bonds, notes and securities and obligations of all sorts, as well as gas, electric and power plants. The trustees were authorized to create, elect, remove and abolish a board of directors, of not less than five nor more than fifteen persons, which should exercise all the powers of the trustees as to management. It was provided that "the trustees shall not be personally liable to any shareholder, director, creditor or otherwise for any action so taken by them pursuant to the directions of the board of directors nor for any action taken or authorized by the board of directors or officers or agents of this trust." [1] It was provided by sec-

---

[1] In addition to the foregoing provision, § 23 of the declaration of trust provided as follows: "No trustee, director, officer, agent or other representative appointed pursuant to any provision hereof, and no officer, agent or director of any corporation which is a trustee hereunder shall be liable for any act or default on the part of any co-trustee, director, officer, agent, attor-

tion 28 of the trust instrument that a trustee, director, officer or agent of the trust might be interested adversely to the trust in dealings with it.

The bill discloses that the defendants Greene and Hill, with one Starch, were the original trustees, that the defendants Hill, Cheney, Hopson and Greene were once trustees, and that the defendants Greene, Furber and Golding are the present trustees. When these various persons became or ceased to be trustees does not appear, except that the original trustees became such on December 31, 1926.

Hopson and Mange, who are not before the court, are alleged to have been the principal wrongdoers. They "conceived a scheme whereby they should get control of and employ for their private profit large sums of the public's money." The public were investors, and paid their money for shares in the Association. If the public were

---

ney, employee or representative, or for having permitted any co-trustee, director, officer, agent, attorney, employee or representative to receive or retain any money or property receivable by the trustees hereunder, or for errors of judgment in exercising or failing to exercise any of the duties, powers, authorities or discretions conferred upon or resting upon him or it, or for any loss arising out of any investment, or for failure to sue for or to collect any moneys or property belonging to this trust or for any act or omission to act, performed or omitted by him or it in good faith in the execution of this trust and each trustee and every such director, officer, agent or representative shall be answerable and accountable only for his or its own receipts and for his or its own wilful acts, neglects and defaults constituting a breach of trust knowingly and intentionally committed by him or it in bad faith, and not for those of any other, or of any bank, trust company, broker, attorney, auctioneer or other person with whom or into whose hands any property forming part of the trust property may be deposited or come, or by whom any action relating to this trust may be taken or omitted to be taken; nor shall any trustee, or any such director, officer, agent or representative be liable or accountable for any defect in title or for failing to transfer to or vest in the trustees title to any property or effects forming, or intended or believed to form part of the trust property, or for failing to take out or maintain any or sufficient insurance or for liens or encumbrances upon any such property or effects, or for lack of genuineness or for invalidity of the shares, bonds, or other obligations or instruments forming part of or relating to the trust property or for any loss, or otherwise, unless the same shall happen through his or its own wilful act, neglect or default constituting a breach of trust knowingly and intentionally committed by him or it in bad faith; but each trustee and each such director, officer, agent or representative shall be entitled out of the trust property to reimbursement for his or its reasonable expenses and outlays and to be put in funds and exonerated and indemnified to his and its reasonable satisfaction from time to time against any and all loss, costs, expense and liability incurred or to be incurred by him or it in the execution of this trust. And no trustee or director, however appointed, shall be obliged to give any bond or surety or other security for the performance of any of his or its duties in this trust."

fairly treated, the fact that the promoters hoped for profit
to themselves was not wrong.   Neither was their purpose
to retain and exercise domination over the policies of the
Association.   But the bill further alleges that they not
only dominated the Association but also bore throughout
a fiduciary relation to it that barred them from profiting
at the expense of the Association, and that allegation bears
upon other more specific complaints.

One complaint is that Hopson and Mange arranged
that the Association should give them the option to sub-
scribe at will for its preferred shares at $95 each instead of
$100 for which they were offered to the public, and then
when the Association offered on August 6, 1929, to exchange
one preferred share in the Association for two shares of
West Boston Gas Company, of which they already con-
trolled four thousand sixteen shares bought for about $37
a share, they furnished more than forty thousand pre-
ferred Association shares which cost them $95 each to carry
out the exchange which gave them over eighty thousand
shares of West Boston Gas Company stock which they
turned over to the Association at $50 each, making a net
profit of more than $200,000.   This was done, the bill
alleges, while Hopson and Mange "continued to have a
fiduciary relation to the Association."   In this, Hopson
and Mange acted "through the connivance and with the
assistance of the then trustees, directors and officers."
And it is alleged that the defendants Golding, Beaman,
Moore, Dalbeck and Curtis "during the period complained
of have been members of the" board of directors, or other
officers of the Association, "who have exercised the powers
and performed the functions of active trustees thereof."
It is further alleged that Hopson and Mange at all times
dominated the Association and all the defendants.

The bill further alleges that "Similarly and by substan-
tially the same device and with the connivance and assist-
ance of the defendants Greene, Cheney and Golding and
the other trustees, directors and officers of the Association
for the time being [which by reference to the preceding
include Golding, Beaman, Moore, Dalbeck and Curtis] the

defendants Hopson and Mange through . . . [an agent] in the autumn of 1929 acquired and resold to the Association 19,519 shares of the Dedham & Hyde Park Gas & Electric Co. at a profit to themselves of $48,797.50, and 28,500 shares of New Bedford Gas & Edison Light Co. at a profit to themselves of $142,750."

The bill further alleges that in the spring of 1927 Hopson and Mange "with the connivance and assistance of the defendants Hill, Greene, Cheney and Golding and the other trustees, officers and directors of the Association for the time being [i.e. Golding, Beaman, Moore, Dalbeck and Curtis]" bought through an agent stock of Cambridge Gas Light Company and sold it to the Association at a profit of $15,158. A similar transaction in April, 1927, with a profit of $142,750 on the sale to the Association of stock of New Bedford Gas & Edison Light Company is alleged.

The bill further alleges that in December, 1928, Hopson and Mange "with the connivance and assistance of the defendants Greene, Cheney and Golding, and the other trustees, directors and officers of the Association for the time being [i.e. Golding, Beaman, Moore, Dalbeck and Curtis]" sold through an agent to the Association for $755,538 stock of New England Electric Securities that had been determined to be worthless.

The bill further complains of a fee of $108,939.48 paid by the Association to Hopson and Mange upon its purchase of stock of Cambridge Electric Light Company from Manson Securities Trust controlled by them, for which fee they performed no substantial or comparable services, but which they obtained "only with the connivance and assistance of the defendants Hill, Greene, Cheney, Golding and the other directors and officers of the Association [i.e. Golding, Beaman, Moore, Dalbeck and Curtis]."

The bill further complains that in April, 1927, Hopson and Mange caused the Association to issue six per cent preferred stock and Manson Securities Trust, which they own and control, to subscribe for nine thousand five hundred forty-three shares at $100 a share, and then in 1928

"with the connivance and assistance of the defendants Hill, Greene, Cheney and Golding" caused the Association to retire those shares at $105 a share before they had been paid for, whereby Hopson and Mange through the Manson Securities Trust made a profit of $47,715.25 without making any investment. The bill alleges that all the assets of Manson Securities Trust are impressed with a trust in favor of the Association, because they were derived from the Association by the improper means alleged in the bill. Other more general allegations of wrongdoing need not be recited.

An analysis of the allegations shows that no wrongdoing is alleged against the defendants Webb and Furber, except that they "have been derelict in their fiduciary duty in that they have taken no steps to require former trustees, officers and directors to account for their stewardship of the Association." Webb appears only as one of the trustees of Manson Securities Trust and is a proper party only because the application of the assets of that Trust for the benefit of the Association is prayed for. For that purpose Webb is a proper party. But the bill does not show that either Webb or Furber knew of the wrongdoing of other defendants, or should have acted against them. Furber appears only as one of the present trustees of the Association, and as such is a proper party to a bill which seeks to vindicate the rights of the Association and to preserve and restore its assets.

1. We do not think the allegations of the bill too vague and indefinite. The bill alleges wrongdoing by Hopson and Mange with the connivance and assistance of other defendants. Whatever connivance may mean, assistance imports a voluntary participation in the wrongful acts of Hopson and Mange. The allegations are not comparable to a naked assertion of fraud or illegality.

2. The exculpatory provisions of the trust instrument purport to limit the liability of each of the defendants to "his . . . own receipts" and "his . . . own wilful acts, neglects and defaults constituting a breach of trust knowingly and intentionally committed by him . . . in bad

faith." Section 28 of the trust instrument purports to free the trustees, directors and other officers from any duty not to be on both sides of a transaction with the Association. The expression "wilful default" is defined in *Warren* v. *Pazolt*, 203 Mass. 328, 347, and *Thompson* v. *Hays*, 11 Fed. (2d) 244, and the expression "bad faith" in *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398, 416. Whether the exculpatory provisions unlawfully attempt to trench upon the fundamentals of fiduciary relationship, is a question which it would be unfortunate to consider at this time, when we have before us only words and not established facts. See *Anderson* v. *Bean*, 272 Mass. 432, 447, 448; *North Adams National Bank* v. *Curtiss*, 278 Mass. 471, 478; *Continental Corp.* v. *Gowdy*, 283 Mass. 204; *Katz* v. *Dunn*, 285 Mass. 340; *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398, 417. The bill alleges a fiduciary relation on the part of Hopson and Mange, their domination of the Association and the other defendants, and unfair and unconscionable profits to Hopson and Mange in their dealings with the Association, taken with the connivance and assistance of the other defendants. We are unwilling to say upon demurrer that the allegations are insufficient. We have equal power with a trial court to postpone consideration of the pleadings in this respect until the facts have been established. *Cram* v. *Cram*, 262 Mass. 509, 513. *Pearson* v. *Mulloney*, 289 Mass. 508, 511. We take this course without prejudice to the presentation of the question of pleading at a later stage of the case.

3. The bill is not multifarious. The objection that a bill is multifarious is not one to be determined according to formal or crystallized rules. It is addressed to the practical wisdom of the court, which must consider whether the bill raises issues too diverse and complex to be dealt with in a single proceeding efficiently and with fairness to the defendants. The bill before us alleges the systematic exploitation of the Association by Hopson and Mange with the connivance and assistance of other defendants. It is no objection to the bill that this exploitation can be divided into different incidents and that some of the defendants

did not participate in some of those incidents. The allegations of the bill have sufficient connection and cohesion to make them proper subjects for judicial inquiry in a single proceeding. *Raynes* v. *Sharp*, 238 Mass. 20, 25. *Cosmopolitan Trust Co.* v. *Mitchell*, 242 Mass. 95, 123. *Digney* v. *Blanchard*, 226 Mass. 335, 339. *Boston* v. *Dolan*, 298 Mass. 346, 353, 354.

4. The trust instrument provided for five hundred thousand preferred shares, which were entitled to cumulative dividends at the rate of $5.50 or $6 a share annually before any dividend on other shares, and to $100 a share in liquidation before any payment to holders of other shares. It may be objected that the bill fails to allege that the remaining assets of the Association are insufficient to afford the plaintiff his rights as a holder of preferred stock, and consequently fails to show that he has been injured by the wrongdoing alleged. See *Ashwander* v. *Tennessee Valley Authority*, 297 U. S. 288, 345; *Campbell* v. *Anniston Office Building Co.* 73 Fed. (2d) 789, 792; *Prindiville* v. *Johnson & Higgins*, 92 N. J. Eq. 515, 525. But the plaintiff has no right to immediate liquidation. His investment must remain at the risk of the business, perhaps for many years. In time, any existing surplus of assets, over and above the amount to which he would be entitled upon liquidation, may disappear. He is entitled as a margin of security to keep the assets as large as proper management under the trust instrument may make possible. It cannot be said that he shows no injury because he does not allege that his margin of security has already disappeared.

5. It is no objection to the bill that the plaintiff is not alleged to have been the owner of preferred stock at the time of the alleged wrongdoing. In bills by minority stockholders of a corporation a few courts have denied relief to a stockholder who obtained his stock after the wrong had been accomplished. Federal Equity Rule 94, promulgated Jan. 23, 1882, 104 U. S. ix. Federal Equity Rule 27, 226 U. S. 656. Federal Rules of Civil Procedure (1938) Rule 23 (b) (1). *Hawes* v. *Oakland*, 104 U. S. 450, 461. *Quincy* v. *Steel*, 120 U. S. 241. *Venner* v. *Great Northern Railway*,

209 U. S. 24. *Rinn* v. *Asbestos Manuf. Co.* 101 Fed. (2d) 344. *Home Fire Ins. Co.* v. *Barber,* 67 Neb. 644, an opinion by Pound, C. *Matthews* v. *Headley Chocolate Co.* 130 Md. 523. But the weight of authority is to the contrary, that the cause of action for the wrongdoing of directors and officers is a part of the assets in which a stockholder has an indivisible interest transferable by a transfer of his certificate (*Baker* v. *Allen,* 292 Mass. 169, 173; *Hanna* v. *Lyon,* 179 N. Y. 107) and that it is immaterial whether the stockholder who seeks to vindicate the right of the corporation was such at the time of the wrongdoing or not. *Pollitz* v. *Gould,* 202 N. Y. 11, and cases cited. Seasongood, 21 Harv. Law Rev. 195. Cook, Corporations (8th ed. 1923) §§ 736, 737. Fletcher, Cyc. of Private Corp. (Rev. Ed. 1932) §§ 5980, 5981.

Here there is no corporation, and not even an association (*Bouchard* v. *First People's Trust,* 253 Mass. 351), but a trust with transferable shares representing the beneficial interest. Such a trust may be sued. G. L. (Ter. Ed.) c. 182, §§ 1, 6. *Larson* v. *Sylvester,* 282 Mass. 352, 358. "Save for the purpose of being sued, the trust, as distinguished from the trustee, is not made a separate legal entity." *Larson* v. *Sylvester,* 282 Mass. 352, 359. The trust, as distinguished from the trustee, cannot contract or act. The trustee "does not act as the agent of the trust but is its embodiment in dealing with its property and in making contracts which affect its property." *Dolben* v. *Gleason,* 292 Mass. 511, 514, 515. Yet for any wrongful impairment of the corpus of the trust the trustees have a cause of action against the wrongdoer, without the concurrence of any of the beneficiaries. Scott, Trusts, §§ 279A–282.4. This is true even though the trustees are themselves participants in the wrongdoing. Scott, Trusts, §§ 294.2–295.1. The amount recovered belongs to the trust assets generally, and not to the persons who at the time of the wrongdoing happened to hold transferable shares. *Greer Investment Co.* v. *Booth,* 62 Fed. (2d) 321. The present plaintiff as a holder of transferable shares has a right to participate in all the assets of the trust, includ-

ing assets diverted from the trust before he obtained his shares and now to be restored. We think it immaterial whether the wrongful conduct of which he complains occurred during his ownership or before it. If it occurred before he acquired his shares, and any conduct of the body of shareholders or of his predecessors in title before he acquired his shares (*Hays* v. *Georgian Inc.* 280 Mass. 10, 20, 21; *Markovitz* v. *Markovitz*, 336 Penn. St. 122; Morawetz, Private Corp. [2d ed. 1886] § 267) is relied on as affecting his rights, it is for the defendants to set up that conduct as a defence.

*Motion to dismiss report denied.*
*Decree overruling demurrer affirmed.*