Joe EADES, Plaintiff-Appellant,

v.

James THOMPSON, Individually and as Governor of the State of Illinois, et al., Defendants-Appellees.

No. 86–2961.

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1987.

Decided June 24, 1987.

---

Francis M. Brady, Brady & Brady, Bloomington, Ill., for plaintiff-appellant.

Ann Plunkett-Sheldon, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before WOOD and EASTERBROOK, Circuit Judges, and WILL, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff Joe Eades brought suit against defendant James Thompson, the governor of Illinois, and other state employees associated with the state correctional system. Eades alleged, under 42 U.S.C. § 1983 (1982), that the state officials, acting under color of state law, had deprived him of certain rights guaranteed by the Constitution while he was incarcerated in the state's correctional system. The state officials responded by filing a motion to dismiss Eades's suit under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The district judge, Judge J. Waldo Ackerman, denied the motion in August 1984. Just prior to trial two years later in August 1986, after the death of Judge Ackerman, Judge Ackerman's successor, Judge Richard Mills, *sua sponte* reconsidered the motion to dismiss. He then granted the motion without prior notice or hearing. Eades filed a motion to reconsider and to vacate, specifically seeking leave to amend his complaint. Judge Mills summarily denied that motion. Eades appeals the *sua sponte* dismissal of his complaint and the denial of his request to amend the complaint.

Because we are reviewing a motion to dismiss and a motion for reconsideration, we state the facts as they have been alleged by Eades in his complaint and in his motion for reconsideration.

Eades was convicted of misdemeanor theft and sentenced to 364 days in prison. On May 17, 1980, Eades was an inmate at the Joliet Correctional Center, awaiting transfer to another facility to serve the remainder of his sentence. On that day Eades began to feel nauseous. He also felt pain in his abdomen. Sometime after noon, Eades reported to the prison's infirmary. He told the nurse there on duty that he had vomited four times that morning. After taking Eades's temperature, which was normal, and noting on the infirmary's log that Eades had complained of nausea and vomiting, the nurse sent Eades back to his cell. The nurse also noted on the log that there was a "slight rebound tenderness" on Eades's right abdomen.

At 3:30 p.m. Eades began to vomit blood. He was removed from his cell and taken to Silver Cross Hospital in Joliet. Doctors there at the hospital performed an emergency appendectomy. Eades remained at the hospital for four days and was released on May 21st to return to the prison's infirmary. Upon his release, Eades received doctor's orders to have the sutures, which were holding the abdominal incision together, removed in one week. Eades also received a sheet entitled "General Instructions For Home Care Following Major Abdominal Surgery." These instructions forbade Eades during his recovery time from lifting, pushing, or pulling any objects. These activity restrictions were designed to guard against strain of the incision on Eades's abdomen—at the time of his operation Eades was measured at 6'3" and 270 pounds.

Three days after Eades was returned to the prison's infirmary, on May 24th, he complained about pain at the site of the incision. A doctor noted bloody drainage under Eades's incisional dressing.

The next day, May 25th, the dressing pulled loose from Eades's incision. A notation on Eades's chart showed that one of the sutures had snapped.

One day later, May 26th, the incision began to gape open. The incision was draining. Eades's chart showed that he was continuing to complain about pain.

Two days later on May 28th, and one week from the time Eades had been released from the hospital, Eades repeated his complaints about abdominal pain. A nurse recorded drainage and bleeding from Eades's incision. Eades repeatedly asked for clean dressings for his incision and clean sheets for his bed during the week, but was not provided with either. Accord-

---

* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

ing to the doctor's orders sent from the hospital, Eades's sutures should have been removed on this day.

The next day, May 29th, Eades was transferred by bus from the prison's infirmary at Joliet to the Vandalia Correctional Center, a distance of about 205 miles. He was forced to carry a heavy box of his belongings onto the bus. Eades was handcuffed and placed on a hard seat for the jolting seven-hour trip.

Once he arrived at Vandalia Eades showed a guard his incision, which at this point was pulling apart and draining green pus. Eades was in pain and asked to be taken to the prison's infirmary. The guard discouraged Eades from going to the infirmary by replying that it would be at Eades's "own discretion." Unsure of what that phrase might mean at a prison to which he was unaccustomed, Eades opted to be placed in a cell.

The next morning, May 30th, Eades went to the prison's infirmary. He was admitted, but the nurses there were uncertain of what they should do with Eades because his medical records had not been sent with him. They did note on the infirmary's log that the incision had pulled apart and was draining.

The following day, May 31st, Eades's chart showed that Eades's incision was oozing a "purient, bloody, foul smelling drainage."

On June 1st, three days after he had arrived at Vandalia, Eades's chart showed that his incision continued to leak a moderate amount of drainage, marked by a foul smell. A physician was notified. Later that evening the physician had Eades admitted to St. Mary's Hospital in Centralia. A treating physician at the hospital finally diagnosed Eades's mysterious ailment as an "infected appendectomy wound." Eades was treated at the hospital and his incision eventually healed.

■ Some three and one-half years after this episode concluded Eades filed a complaint against Governor Thompson and other state officials associated with Illinois's correctional system.[1] Eades set out in the complaint the chronology of his episode and included the names of as many of the administrators, guards, doctors, and nurses as he could remember. He also named other "unknown individuals" who had been involved in the episode, but for whom Eades had no names. Eades stated in his complaint that he would add by amendment the specific names of the unknown individuals when their names became available to him through discovery.

Nearly five months after the complaint had been filed, but before any discovery had been completed, Judge Ackerman held a hearing on July 2, 1984. He ruled that Eades would be required to add the names of new parties within forty-five days and complete discovery within ninety days. A jury trial was set for the first week of November 1984.

The day following this hearing, Eades sent to the state defendants a set of interrogatories designed in part to elicit the specific names of the unknown individuals. Under Rule 33, defendants were required to answer those interrogatories within thirty days. Fed.R.Civ.P. 33(a). That would have left Eades with several days in which

---

1. There is no statute of limitations set out in 42 U.S.C. § 1983 (1982). The appropriate time limit is therefore determined by the law of the state in which the federal court sits. *O'Sullivan v. Felix*, 233 U.S. 318, 321–22, 34 S.Ct. 596, 597–98, 58 L.Ed. 980 (1914). At the time Eades filed this suit, the applicable statute of limitations in Illinois was five years, as determined by reference to Illinois's statute of limitations for "all civil actions not otherwise provided for" by the Illinois Limitations Act. Ill.Rev.Stat. ch. 110, ¶ 13–205 (1985); *Beard v. Robinson*, 563 F.2d 331, 338 (7th Cir.1977). Subsequent to the time Eades filed this suit the Supreme Court held

that the statute of limitations borrowed from a state for purposes of a section 1983 action must be the one that governs personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985). Illinois provides a two-year statute of limitations for personal injury actions. Ill.Rev.Stat. ch. 110, ¶ 13–202 (1985). *Wilson* did not say, however, whether its mandate should be applied retroactively. We have decided previously that it should not. *Anton v. Lehpamer*, 787 F.2d 1141, 1141 (7th Cir.1986). Thus, Eades's suit was timely filed.

to amend his complaint with the additional names.

But on August 14th, the forty-second day after the hearing, Eades moved for leave to add new parties. He explained in his motion that none of the interrogatories had been answered. He asked for an extension of the forty-five day deadline to add new parties.

On the forty-fifth day, August 17th, Eades amended Count II of his complaint, his first amendment, by adding the names of some of the unknown parties. Those names had been revealed in answers to some of the interrogatories Eades received from the Vandalia defendants on August 15th, the forty-third day after the hearing. Eades again asked for additional time to add new parties because he had not yet received answers to his other, yet outstanding, interrogatories from the Joliet defendants. Eades filed this first amendment on a Friday.

The following Monday, August 20th, Eades received the remaining answers to his interrogatories. The next day, Tuesday, August 21st, now forty-nine days after the hearing, even though leave to amend had not been granted Eades filed a second amendment to his complaint, amending Count I, to add the remaining names of new parties.

Although during this time the defendants did not answer the interrogatories Eades had sent to them, they did prepare a motion to dismiss or for summary judgment. That motion was filed on July 26th, although the documents supporting the motion for some reason had been filed several days earlier on July 17th. Eades responded to this motion on July 26th with a brief in opposition. On the basis of the briefs and other papers Judge Ackerman denied the defendants' motion to dismiss or for summary judgment on August 8th.

Five days after Eades filed the second amendment to his complaint, on August 26th, his lawyer's offices (Brady & Brady of Bloomington, Illinois) were completely destroyed by fire, including all papers relating to Eades's case. Two days after the fire, on August 28th, the district court clerk's office notified Eades's lawyer that his request for additional time to add new parties through the second amendment which had already been filed on August 21st had been denied.

Thereafter on September 4th Eades filed a motion to extend time to complete discovery because of the fire and to reconsider the decision not to allow Eades to amend his complaint the second time. This motion was granted in full by order dated October 4th by United States Magistrate Charles Evans.

On November 23rd Judge Ackerman died. His successor, Judge Richard Mills, was appointed eight months later on July 22, 1985.

For nearly two years Eades's case remained on the district court's docket with a host of other cases that had accumulated due to Judge Ackerman's death. On March 26, 1986, Judge Mills held a scheduling conference with the parties' attorneys. Time limits were set on the taking of discovery and filing of pretrial motions. A final pretrial conference was scheduled for August 25th and the case was set for trial on September 8th. No new motions were filed in the case. However, on August 19th, six days before the final pretrial conference was to be held and twenty days before the scheduled trial date set at the scheduling conference Judge Mills *sua sponte* without notice or hearing reconsidered Judge Ackerman's denial of the defendants' earlier motion for dismissal, reversed Judge Ackerman's prior ruling, and dismissed Eades's complaint.

Eades moved to reconsider and to vacate, specifically seeking leave to amend his complaint a third time. In support of this motion, Eades attached discovery material he had received since he had filed the second amendment to his complaint two years before. The material tended to support and flesh out Eades's allegations of cruel and unusual punishment. Eades proposed to add this information to his complaint. Judge Mills summarily denied Eades's motion in all respects without giving any reason for the denial.

Eades argues that Judge Mills improperly dismissed his complaint as a matter of law and of procedure. A district court's dismissal of a complaint for failure to state a claim upon which relief can be granted is a legal determination. *North Star International v. Arizona Corporation Commission*, 720 F.2d 578, 580 (9th Cir.1983) ("A dismissal under Federal Rule of Civil Procedure 12(b)(6) is essentially a ruling on a question of law."); *Yuba Consolidated Gold Fields v. Kilkeary*, 206 F.2d 884, 889 (9th Cir.1953) ("A ruling on a motion to dismiss for failure to state a claim upon which relief can be granted is a ruling on a question of law and does not admit the exercise of discretion."); *Mitchell v. E–Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir.1959). When evaluating a legal question, our standard of review is *de novo. Gianukos v. Loeb Rhoades & Co.*, 822 F.2d 648 at 652 (7th Cir. 1987); *SEC v. Suter*, 732 F.2d 1294, 1300 (7th Cir.1984) ("An appellate court may properly conduct an independent review and resolution of questions of law determined by a district court. Conclusions of law made by a district court do not bind a reviewing court.") (citations omitted).

Defendants had moved for dismissal early in the case. Eades successfully opposed the motion. Judge Ackerman denied the motion, the same motion later allowed by Judge Mills, but he did so by means of a docket entry without a written order. Thus, we do not have the benefit of Judge Ackerman's analysis in support of his ruling.

We must determine whether the allegations on the face of Eades's complaint are sufficient to survive a motion to dismiss for failure to state a claim upon which relief can be granted. Eades brought his action under 42 U.S.C. § 1983 (1982). That section provides that a plaintiff "depriv[ed] of any rights, privileges, or immunities secured by the Constitution," by persons acting under color of state law, may bring "an action at law, suit in equity, or other proper proceeding for redress." *Id.* Eades alleges that certain state employees deprived him of his right to be free from the infliction of cruel and unusual punishment as guaranteed by the eighth amendment. Eades also alleges that the State of Illinois, through its employees, violated his rights to due process of law and equal protection of law guaranteed by the fourteenth amendment.

The Supreme Court has explained that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). The Court elaborated by saying:

[A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Id.* at 105–06, 97 S.Ct. at 291 (footnote omitted).

Eades, to make out an eighth amendment violation, must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs," and not merely allege "that a physician has been negligent in diagnosing or treating a medical condition." On the face of his complaint, Eades must only make "a short and plain statement of the [eighth amendment] claim showing that [he] is entitled to relief." Fed.R.Civ.P. 8(a)(2). Eades is not required to set out in detail the facts upon which his claim rests or otherwise plead evidence. *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957);

*American Nurses' Association v. Illinois,* 783 F.2d 716, 727 (7th Cir.1986). Moreover, we will read Eades's complaint liberally to see if it outlines the essential elements of an eighth amendment claim. *Sutliff, Inc. v. Donovan Cos.,* 727 F.2d 648, 653–54 (7th Cir.1984); Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").

Eades alleged in his complaint that following his emergency appendectomy at the hospital he was transferred back to the care of the defendants "with the specific written transfer orders from the physician at Silver Cross Hospital that the sutures used to close the surgical incision in plaintiff's abdomen were to be removed in one week." Eades also alleged in his complaint that he complained of abdominal pain on the seventh day after he was returned to the prison's infirmary and that the defendants noticed his incision was draining. He alleged that on that same day he was transferred to another prison with the sutures still partially in place, with no accompanying medical records, and with no check by prison officials to see that all of his medical care had been properly completed prior to his transfer. Eades finally alleged that as a result of "the deliberate indifference to" his medical needs, he "sustained serious injury and further, plaintiff suffered pain and mental anguish."

■ We believe these allegations state a claim sufficient to defeat a motion to dismiss under Rule 12(b)(6). In an earlier case we were faced with a similar allegation that had also been dismissed by a district judge for failure to state a claim. In the complaint we were then considering, the prisoner alleged

> that he was placed in unsanitary punitive confinement while sutures were in his ear, that the date of removal of the sutures was delayed for the period of punitive confinement (fifteen days at a maximum), and that the result of this treatment was that his ear became infected. He acknowledges that this infection was subsequently treated.
>
> We conclude that [the prisoner's] ... allegations describing intentional delay in

removing sutures while he was confined in unsanitary environs suffice to state claims for relief for intentional mistreatment likely to aggravate his condition.

*Thomas v. Pate,* 493 F.2d 151, 158 (7th Cir.1974), *cert. denied,* 423 U.S. 877, 96 S.Ct. 149, 46 L.Ed.2d 110 (1975). *Pate* was cited with approval by the Supreme Court in *Estelle,* 429 U.S. at 104 n. 10 & 106 n. 14, 97 S.Ct. at 292 n. 14, and by us in *Duckworth v. Franzen,* 780 F.2d 645, 653 (7th Cir.1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986).

■ Eades also argues that irrespective of the bare legal sufficiency of his complaint on its face, Judge Mills should not have dismissed the complaint *sua sponte* when Judge Ackerman had already ruled on it by denying dismissal. Ordinarily "'A judge should hesitate to undo his own work. Still more should he hesitate to undo the work of another judge.'" 1B J. Moore, *Federal Practice* ¶ 0.404[4], at 453 (1984) (quoting *Peterson v. Hopson,* 306 Mass. 597, 29 N.E.2d 140, 145 (1940) (citation omitted)); *Peterson v. Lindner,* 765 F.2d 698, 704 (7th Cir.1985) ("[A] district judge should carefully consider the propriety of re-examining a prior ruling of another district judge in the same case...."). *Sua sponte* dismissals even by the same judge are not favored, particularly where no party has again raised the issue, and there is no notice or hearing. As we have previously explained:

> *Sua sponte* dismissals for failure to state a claim upon which relief may be granted are permitted, so long as a sufficient basis for the court's action is apparent from the plaintiff's pleading....
>
> *Sua sponte* dismissals without prior notice or an opportunity to be heard on the issues underlying the dismissal, however, "generally may be considered hazardous." They may be criticized on several grounds. First, they conflict with traditional adversarial concepts of justice to the extent that they make the district court "a proponent rather than an independent entity." Second, such dismissals may ultimately waste, rather then economize, judicial resources, by producing ap-

peals and remands that might have been avoided. Third, *sua sponte* dismissals may prejudice plaintiffs by depriving them of an opportunity to amend their complaints or to argue against the dismissal.

At least four circuits do not permit *sua sponte* dismissals without notice and an opportunity to be heard.

We cannot find a Seventh Circuit case in which a *sua sponte* dismissal without any notice and opportunity to be heard has been upheld. . . .

We need not answer the question whether a *sua sponte* dismissal without any notice and opportunity to be heard (in fact if not in form) is ever permissible, because in the case before us no sufficient basis for the dismissal is apparent from the pleadings.

*Doe v. St. Joseph's Hospital,* 788 F.2d 411, 414–16 (7th Cir.1986) (citations and footnotes omitted).

Notice and an opportunity to be heard would have been particularly helpful here as it was to this court at oral argument. Eades raised and discussed this court's *Pate* decision, which was the lynchpin in his successful written argument to defeat the defendants' motion to dismiss before Judge Ackerman. It does not appear, however, that *Pate* came to Judge Mills's attention at the time he later dismissed the case. In his briefs and at oral argument in this court *Pate* was again stressed by Eades.

■  In addition to the eighth amendment claim, Eades also alleges violations of his rights to due process and equal protection of the law under the fourteenth amendment. Eades's complaint, however, does not allege that he was treated any differently than other prisoners at either Joliet or Vandalia with respect to receiving medical attention. His complaint thus does not support his equal protection claim. That claim was properly dismissed.

■  Neither does Eades support his due process claim.[2] His allegations of medical

mistreatment may be cognizable under the eighth amendment's prohibition against cruel and unusual punishment, but they do not even sketchily outline a due process claim. Thus, Eades's due process claim also was properly dismissed.

Eades further contends that Judge Mills, who gave no reason for not doing so, should have allowed him to amend his complaint for a third time. Our review of a district court's decision to allow or deny amendments to a complaint is governed by the abuse of discretion standard. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). As the Supreme Court has stated "the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

■  A district judge may exercise discretion in deciding whether to allow an amendment to a complaint. That discretion is circumscribed by practical considerations and by deference to the demands of justice. Rule 15(a), for example, allows a party to "amend his pleading once as a matter of course at any time before a responsive pleading is served." Fed.R.Civ.P. 15(a). Although that rule requires a party to obtain leave of court to amend a pleading at any other time, it also commands that "leave shall be freely given when justice so requires." *Id.*

■  Admittedly, Eades had already amended his complaint two times. He had no automatic right to amend it a third time. A third amendment to the complaint, however, appears to have been justified, even after the complaint was dismissed *sua sponte.* Eades had attached additional dis-

---

**2.** The only application the due process clause of the fourteenth amendment seems to have in this case is its use to apply to the states the eighth amendment's prohibition against cruel and un-

usual punishment. *Robinson v. California,* 370 U.S. 660, 666–67, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1962).

covery material to his motion for reconsideration that tended to strengthen his eighth amendment claim. *See Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039–40 (7th Cir.1987) (recognizing the propriety of attaching affidavits to post-dismissal motion for reconsideration if leave to amend is also sought). Eades did not file this discovery material at the time it had been earlier received because the district court's local rules forbade him from doing so. C.D.Ill.R. 17.A ("[Discovery materials] shall be served upon other counsel or parties, but *shall not* be filed with the court.") (emphasis added). Thus, at the time Judge Mills *sua sponte* dismissed this case he could not have been fully aware of the progress of discovery.

Eades amended his complaint the first time for the sole purpose of filling in specific names to replace "unknown individuals" in his complaint. He was forced to amend his complaint a second time only because the defendants had been slow in responding to his interrogatories. Consequently, Eades had never amended his complaint to include more detailed factual allegations or more fully developed legal theories. He did not believe, however, that he needed to amend his complaint for either of these purposes because before Judge Ackerman he had already defeated the defendants' motion to dismiss for failure to state a claim. We believe that to deny a third, but substantial amendment was an abuse of the district judge's discretion. *Triplett v. Leflore County*, 712 F.2d 444, 446 (10th Cir.1983) ("In the absence of an apparent reason to refuse leave to amend [following dismissal for failure to state a claim]—such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, futility of an amendment, etc.—'the leave sought should, as the rules require, be freely given.'") (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)); *Morrison v. Tomano*, 755 F.2d 515, 516 (6th Cir.1985) ("[The sixth circuit's] requirements, (1) that the court give

the plaintiff a chance to amend the complaint or respond to notice of intended dismissal, and (2) that, if the claim is dismissed, the court state the reasons for dismissal, are appropriately applied to *sua sponte* dismissals for failure to state a claim.") (footnote omitted).

We hold that Judge Mills correctly decided that Eades's complaint failed to state a claim under the due process and equal protection clauses of the fourteenth amendment. Therefore, we affirm that part of the order dismissing those allegations in Eades's complaint. We also affirm that part of the order dismissing certain administrative officials from the case because they had no personal involvement in Eades's episode. Eades did not attempt to allege a systemic problem of collective responsibility, *e.g. Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir.1983), *cert. denied*, 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 885 (1984), but rather alleged individual responsibility for violations of his constitutional rights. Each individual defendant can be liable only for what he or she did personally, not for any recklessness on the part of any other defendants, singly or as a group. Any defendant not alleged to be individually responsible for violation of Eades's constitutional rights should be dismissed from any amended complaint which plaintiff may file.

As for Eades's eighth amendment allegations, however, we believe he stated a claim upon which relief can be granted that was sufficient to withstand a motion to dismiss.[3] Upon remand Eades shall be given an additional opportunity to amend his complaint. Therefore, that part of the district court's order dismissing Eades's eighth amendment claim is reversed and the remaining case is remanded for further proceedings in accordance with this opinion. Seventh Circuit Rule 36 shall not apply on remand.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

---

**3.** Our ruling in this case is not to be construed as a ruling on the merits of Eades's complaint

because that function is to be left to the factfinder.