NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12926

COMMITTEE FOR PUBLIC COUNSEL SERVICES & another[1] vs.  CHIEF
JUSTICE OF THE TRIAL COURT & others[2] (No. 2).


April 28, 2020.


Committee for Public Counsel Services.  Chief Justice of the
     Trial Court.  Commissioner of Correction.  District
     Attorney.  Sheriff.  Parole.  Pretrial Detention.  Supreme
     Judicial Court, Superintendence of inferior courts.
     Practice, Criminal, Sentence, Execution of sentence,
     Parole.


     The petitioners seek reconsideration or modification of our
decision in this case, which was issued on April 3, 2020.
Committee for Pub. Counsel Servs. v. Chief Justice of the Trial
Court, 484 Mass. 431 (2020).  Specifically, they ask us to
reconsider our determination that neither our inherent judicial
authority nor our superintendence authority permits a judge to
stay a final sentence that is being served, absent a pending
appeal or a motion for a new trial, without violating the
separation of powers under art. 30 of the Massachusetts
Declaration of Rights.  See id. at 436.  The petitioners also
assert violations of this court's order with respect to
reporting requirements of information to be sent to the special
master, and, in addition, ask this court to expand the reporting
requirements so as to provide the petitioners with information

_____

     [1] Massachusetts Association of Criminal Defense Lawyers.

     [2] Department of Correction; parole board; Attorney General;
district attorneys for the Berkshire, Bristol, Cape and Islands,
eastern, Hampden, middle, Norfolk, northern, northwestern,
Plymouth, and Suffolk districts; and fourteen sheriffs'
departments.

that might be used to pursue other legal pathways by which the population of those held in custody serving sentences might be reduced.

We affirm our prior decision as to the extent of our constitutional authority to stay final sentences absent an ongoing challenge to the underlying conviction or a violation of constitutional rights.  Notwithstanding the petitioners' assertion that our previous "misapprehension" of our authority was as a result of the speed with which the decision was issued after oral argument, the jurisprudence on this point is well-established.  We do, however, conclude that some of the requested relief as to additional reporting requirements should be allowed, and, accordingly, issue a revised Appendix B, attached hereto.

As we stated in our decision, the executive branch has the authority, inter alia, to commute sentences, issue furloughs, and allow early parole.  We urge the executive branch to contemplate how it best might exercise those constitutional powers to mitigate the spread of COVID-19 in the Commonwealth's prison system.

Background.  In our prior decision, we recognized that the unprecedented and urgent conditions created by the global COVID-19 pandemic necessitated judicial action to reduce the population of those held in custody.  Committee for Pub. Counsel Servs., 484 Mass. at 445.  Accordingly, we determined that the advent of the pandemic amounted to a changed condition as a matter of law, so that any individual who was being held pretrial could seek reconsideration of the bail decision which resulted in the pretrial detention.  Id. at 435.  For individuals not charged with specified offenses as enumerated in Appendix A, set forth in that decision, see id. at 454, we created a strong but rebuttable presumption of release, id. at 447 ("These categories of pretrial detainees shall be ordered released on personal recognizance unless the Commonwealth establishes, by a preponderance of the evidence, that release would result in an unreasonable danger to the community or that the individual presents a very high risk of flight").

At the same time, we determined that "[o]ur broad power of superintendence over the courts does not grant us the authority to authorize courts to revise or revoke defendants' custodial sentences, to stay the execution of sentence, or to order their temporary release unless a defendant (1) has moved under Mass. R. Crim. P. 29, [as appearing in 474 Mass. 1503 (2016),] within

sixty days after imposition of sentence or the issuance of a decision on all pending appeals, to revise or revoke his or her sentence, (2) has appealed the conviction or sentence and the appeal remains pending, or (3) has moved for a new trial under Mass. R. Crim. P. 30[, as appearing in 435 Mass. 1501 (2001)]." Id. at 450.

Discussion. 1. Stays or suspensions of sentences. As the petitioners point out, the bulk of our reasoning in the slip opinion focused on their argument seeking a suspension of the sixty-day time period in Mass. R. Crim. P. 29, within which a judge may revise or revoke a sentence. See Committee for Pub. Counsel Servs., 484 Mass. at 450. Having determined that the sixty-day time period exists to protect the separation of powers, we concluded that it was beyond our superintendence authority to eliminate the requirement of a time limit. Id. Moreover, as we noted, the conditions for which a revision may be sought must be something that existed at the time of conviction.[3]

The petitioners now ask for release, or stay, under our inherent authority to stay sentences. We conclude that the global stays of sentences that the petitioners request also would co-opt executive functions in ways that are not permitted by art. 30.

In Commonwealth v. Charles, 466 Mass. 63, 72 (2013), citing Commonwealth v. McLaughlin, 431 Mass. 506, 520 (2000), we said that "a judge has the inherent power to stay sentences for 'exceptional reasons permitted by law.'" We later explained the exceptional reasons more precisely in that case by answering the reported question, "In exceptional circumstances, a judge of the Superior Court does have the authority to allow a defendant's motion to stay the execution of his sentence, then being served, pending disposition of the defendant's motion for a new trial . . . ." Charles, supra at 79. "In the context of a pending appeal, the practice of granting a stay of execution of sentence 'is grounded in rudimentary notions of justice' because a 'conviction may be reversible, but the time spent in prison is

---

[3] In response to an issue raised by the Chief Justices of the Trial Court, we clarify that the tolling provision of this court's Order Regarding Court Operations under the Exigent Circumstances Created by the COVID-19 (Coronavirus) Pandemic, dated April 1, 2020; our updated order, dated April 27, 2020; and any similar orders subsequently issued, apply to motions filed under Mass. R. Crim. P. 29.

not.'"[4]  Id. at 77, quoting Commonwealth v. Levin, 7 Mass. App. Ct. 501, 512-513 (1979).  See Charles, supra at 78 (elaborating on key fact that defendant's "motion for a new trial has presented an issue that 'offers some reasonable possibility of a successful decision" [quotation omitted]).

Other than in circumstances where the validity of the underlying conviction is being questioned, however, the petitioners have not put forth anything to indicate that this court has inherent authority to stay, across the board, all sentences that are being executed for certain groups of incarcerated individuals, or to create a presumption of stay for those individuals.  For even in the broadest formulation of our inherent power, any stay, even those granted in exceptional circumstances, must be "permitted by law."  See Charles, 466 Mass. at 72; art. 30 ("the judicial [department] shall never exercise the legislative and executive powers, or either of them").

The power to stay sentences in the absence of a challenge to the underlying conviction after the time period of Mass. R. Crim. P. 29 has expired lies in the executive branch.  "In Commonwealth v. O'Brien, [175 Mass. 37, 39 (1899)], the court said that [Commonwealth v. Hayes, 170 Mass. 16 (1897)] implies that, under the statute," the power of the court after all appeals have been decided "to vacate the order staying the sentence, and to order the sentence executed, does not extend so far as to permit a further stay of the sentence on independent grounds not affecting the legality or propriety of the conviction."  McLaughlin, 431 Mass. at 517.  "That is a strong indication that trial judges lack authority to stay execution of sentence on independent grounds not affecting the legality or propriety of the conviction" (quotation omitted).  Id., and cases cited.  We follow this strong indication here.  See Peterson v. Hopson, 306 Mass. 597, 601-602 (1940), and cases

---

[4] We recognize the petitioners' assertion that an untimely death is even less reversible than time spent in prison.  As the petitioners note, a claim of substantial and unmitigated risk of harm or death is the gravamen of another emergency petition now pending before this court, seeking class certification and a preliminary injunction on the ground of violations of the provision against cruel and unusual punishment under the Eighth Amendment to the United States Constitution.  See Foster vs. Commissioner of Correction, No. SJC-12935.  That claim is the proper vehicle by which to seek injunctive relief.

cited; <u>Jamnback</u> v. <u>Aamunkoitto Temperance Soc'y, Inc</u>., 273 Mass. 45, 50 (1930).[5]

The petitioners contend that this court should consider the pending claims for declarative relief in another case, Foster <u>vs</u>. Commissioner of Correction, No. SJC-12935, as a challenge to all of the underlying convictions of all individuals serving sentences, so as to satisfy the requirements of Mass. R. Crim. P 29.  This contention is unavailing.  First, there is no challenge in that case to the underlying convictions of any individual; rather, the complaint seeks declaratory relief. Granting a stay without such a challenge essentially amounts to granting a furlough, which lies within the purview of the executive branch.  Thus, if a judge were to suspend execution of a sentence that is being served, without any pending motion challenging the conviction or the validity of the sentence when it was imposed, there could be a significant issue with art. 30 and the separation of powers.  Moreover, the parties, and the incarcerated individuals represented by the plaintiffs in the two cases, are not the same.  In any event, we decline the petitioners' urging that we order trial judges to suspend sentences for large groups of inmates, or to act on a presumption that sentences should be suspended.

---

[5] Specifically with respect to Mass. R. Crim. P. 29, in addition to the sixty-day filing limitation, a judge must consider a motion to revise or revoke a sentence within a reasonable time after the motion is filed.  See <u>Commonwealth</u>. v. <u>DeJesus</u>, 440 Mass. 147, 150-151 & n.7 (2003).  See, e.g., <u>Commonwealth</u> v. <u>Barclay</u>, 424 Mass. 377, 380–381 (1997) (six-year delay between defendant's sentencing and consideration of motion to revise or revoke was unreasonable); <u>Commonwealth</u> v. Layne, 386 Mass. 291, 295–296 (1982) (stressing that '[w]ith the passage of time from the date of sentencing, it becomes increasingly difficult for a trial judge to make the determination called for by the rule without improperly considering postsentencing events"); K.B. Smith, Criminal Practice and Procedure § 2028 (2d ed. 1983 & Supp. 2003).  But see <u>Commonwealth</u> v. <u>McGuinness</u>, 421 Mass. 472, 473 n.2 (1995) ("Rule 29 of the Massachusetts Rules of Criminal Procedure, . . . requires that a motion to revise or revoke must be filed within sixty days of the imposition of a sentence. However, under this rule, once the motion is filed, a judge may act on it at any time.  See Reporters' Notes to Mass. R. Crim. P. 29(a)").

2. Motions for funds. The petitioners assert that motions for funds for social workers and others who are needed to establish medical parole eligibility or to put in place release plans for paroled individuals are not being heard, or are being denied, and that hearings are not taking place in a timely manner. Due to the extraordinary nature of this pandemic, we exercise our superintendence authority to require the trial court departments to develop procedures to enable counsel to seek expedited approval of such funds for those who are being held pretrial, those who are civilly committed for substance abuse treatment, and those who are serving a committed sentence.

3. Medical records. The petitioners assert that numerous incarcerated individuals continue to experience difficulties in obtaining copies of their medical records from the institutions in which they are being held. According to the petitioners, "some [institutions] are even requiring attorneys to mail medical releases to clients." At the same time, other institutions have been permitting attorneys to request medical records and medical releases by electronic mail. All correctional facilities shall accept requests by electronic mail, and shall make copies of medical records immediately available to the incarcerated person upon request, or to the individual's attorney upon request accompanied by signed permission by the incarcerated person. Because attorneys may not visit incarcerated individuals at this time, the institutions shall obtain the necessary permissions for medical releases directly from the individuals; such permissions shall be sought expeditiously upon request by the attorney.

4. Reporting requirements. In our decision in this case, we agreed that the potential spread of COVID-19 through jails and prisons in the Commonwealth created a situation that is "urgent and unprecedented, and that a reduction in the number of people who are held in custody is necessary." See Committee for Pub. Counsel Servs., 484 Mass. at 445. To facilitate this reduction, the petitioners request additional information from the respondents in order effectively to exercise legal channels by which inmates may pursue release. For example, they seek the identity of those who are serving sentences in houses of correction who have not reached their parole eligibility dates, but who are eligible for early consideration pursuant to 120 Code Mass. Regs. § 200.10 (2017). We agree that it is important that the petitioners are able to explore every extant legal mechanism by which to reduce the population of incarcerated individuals. Accordingly, the reporting requirements in Appendix B, as set forth in our decision, see Committee for Pub.

Counsel Servs., supra at 456, shall be amended to enable counsel more readily to identify those individuals.  See infra.

Similarly, with respect to individuals who are incarcerated pending a final probation violation hearing or on a technical parole violation, the reporting requirements set forth in Appendix B also shall be amended.  See infra.

The petitioners also assert delays and a lack of compliance with the reporting requirements we previously ordered.  To the extent that they have information about particular instances of such noncompliance, as we stated in our decision, the proper channel by which to address such issues is to bring these concerns to the special master, who may be able to investigate and facilitate a resolution.

5.  Timeliness of hearings on Mass. R. Crim. P. 29 motions. The petitioners assert that responses to emergency motions for resentencing under Mass. R. Crim. P. 29 have been delayed, and, once responses are received, hearings on the motions also have been delayed.  We emphasize that responses should be filed promptly and that hearings should be held expeditiously thereafter, in conformance with the guidelines promulgated by the trial court departments.  As stated, see note 3, supra, these motions are subject to the tolling provisions of this court's orders regarding court operations under the exigent circumstances created by the COVID-19 pandemic.

So ordered.


The case was submitted on briefs.
Rebecca A. Jacobstein, Benjamin H. Keehn, Rebecca Kiley, & David Rassoul Rangaviz, Committee for Public Counsel Services, for Committee for Public Counsel Services.
Matthew R. Segal, Jessie J. Rossman, Laura K. McCready, Kristin M. Mulvey, Chauncey B. Wood, & Victoria Kelleher for Massachusetts Association of Criminal Defense Lawyers.
David C. Kravitz, Deputy State Solicitor, for the Attorney General.
Daniel P. Sullivan, Special Assistant Attorney General, for Chief Justice of the Trial Court.
Charles W. Anderson, Jr., for Department of Correction.
Shara Benedetti for parole board.
Rachael Rollins, District Attorney, & Cailin M. Campbell, Assistant District Attorney, for district attorney for the Suffolk district.

Thomas M. Quinn, III, District Attorney, Jonathan Blodgett, District Attorney, Anthony D. Gulluni, District Attorney, Joseph D. Early, District Attorney, Michael W. Morrissey, District Attorney, & Timothy J. Cruz, District Attorney, for the district attorney for the Bristol district & others.

Dan V. Bair, II, Special Assistant Attorney General, & Robert Harnais for fourteen sheriffs' departments.

Appendix B (AMENDED).

REPORTING REQUIREMENTS

1.  In order to effectuate the purposes of this decision and the underlying public health goals, while the COVID-19 state of emergency remains in effect, the court asks the Department of Correction (DOC) and each sheriff to provide daily reports to the special master, the probation service, the district attorneys, and Committee for Public Counsel Services (CPCS), identifying:

a.  The over-all inmate population;

b.  The number of COVID-19 tests and number of positive results for all inmates, correction officers, or other staff members, including contactors, by facility; and

c.  The number of inmates who have been released pursuant to the procedures or guidance set forth in this decision.

2.  In addition to the above, the sheriffs also shall provide the special master, the probation service, the district attorneys, and CPCS daily census reports containing the names of pretrial detainees, the docket numbers in the cases for which they are being held, and the offenses with which they have been charged.

3.  The probation department shall provide daily reports to the special master, the district attorneys, CPCS, and each sheriff containing the identity and relevant docket numbers for any individual awaiting a preliminary hearing or a final revocation hearing for an alleged violation of probation.

4.  The parole board shall provide weekly reports to the special master, the district attorneys, CPCS, the sheriffs, and the DOC, containing the identities of:

a.  Incarcerated individuals serving a sentence in a house of correction who have not yet reached their initial parole eligibility date, but who are eligible to submit a petition to the parole board for early consideration pursuant to 120 Code Mass. Regs. § 200.10(3) (2017);

b.  All incarcerated individuals who have received a positive vote for parole but who have not yet been released;

c.  All incarcerated individuals who have received a positive vote for parole but for whom release is contingent upon completing a particular program or spending time in a lower security facility, who with counsel could seek reconsideration of the parole contingency under 120 Code Mass. Regs. § 304.03 (2017);

d.  All incarcerated individuals whose parole was revoked and who are serving time for a technical violation of parole.

e.  Any individuals who previously have submitted a petition for medical parole, regardless of the outcome of that petition, and who remain incarcerated.